**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MOHAMMAD MONIRUZZAMAN,

     Defendant-Appellant.

No. 05-3327
(District of Kansas)
(D.C. No. 04-CR-40081-SAC)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

## I.    INTRODUCTION

Defendant Mohammad Moniruzzaman was convicted after a jury trial of

entering a false marriage for purposes of evading United States immigration laws,

conspiracy to enter a false marriage for purpose of evading United States

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

immigration laws, and conspiracy to provide false statements. He appeals his conviction, raising allegations of erroneous evidentiary rulings and jury instructions, prosecutorial misconduct, and cumulative error. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** Moniruzzaman's convictions.

## II.    BACKGROUND

Moniruzzaman and his brother, Qamruzzaman Islam, are citizens of Bangladesh. In 2003, Islam began communicating with Amanda Revell in an Internet chat room. Shortly thereafter, the two met for dinner. During the meal, Islam asked Revell if she would be interested in marrying his friend to help the friend get a "green card." Revell eventually agreed to marry Islam's friend in exchange for monthly payments of $150 and the understanding she would receive additional payments if Islam's friend received a work permit and United States citizenship. Revell signed a marriage license and immigration papers provided to her by Islam.

On May 9, 2003, Islam picked up Revell at her home in Topeka and drove her to the Douglas County Courthouse in Lawrence, Kansas. Revell met the groom, appellant Moniruzzaman, in the parking lot of the courthouse and learned he was Islam's brother. After the ceremony, Moniruzzaman drove Revell back to her home in Topeka. Between May 2003 and November 2003, Revell saw Moniruzzaman approximately once a month, when he brought monthly cash

payments to her. In some months, Revell saw Moniruzzaman several times because he needed her signature on tax forms and other documents. Among the documents Revell signed were papers requesting a change to Moniruzzaman's immigration status and a lease for a University of Kansas student housing apartment. Revell also accompanied Moniruzzaman to his bank, where Moniruzzaman added her to his account.

In November 2003, Revell went to the Topeka Police Department and told Officer Tom Glor about her marriage to Moniruzzaman. Glor contacted Immigration and Customs Enforcement ("ICE") and a federal immigration investigation was commenced by Agent Ken Lovesee. Revell informed Lovesee she and Moniruzzaman would be interviewed by immigration officials on December 9, 2003, regarding Moniruzzaman's request for a change in his immigration status. Revell also informed Lovesee she was meeting with Moniruzzaman and Islam on December 2 to discuss the December 9 meeting and "go over some details and make sure that everything was correct and would go smooth at INS." Revell agreed to wear a recording device to the meeting with Moniruzzaman and Islam.

On December 2, Lovesee and Glor observed Islam and Moniruzzaman pick Revell up at her residence then drive to a McDonald's restaurant where the three sat at a booth for approximately one hour. Revell testified that during this meeting Moniruzzaman was "coaching [her] to say things for INS like his birth

-3-

date and, you know, Social Security number and things of that nature." After Revell returned to her residence, Lovesee and Glor retrieved the digital recording device and took it to the FBI's electronic surveillance unit where the information was downloaded to a compact disc.

On December 9, 2003, Moniruzzaman was interviewed by Daniel Byrd, an employee of the United States Citizenship and Immigration Services. Prior to the interview, Byrd had been advised by Lovesee that Moniruzzaman was under investigation. Moniruzzaman told Byrd he and Revell had met on the campus of the University of Kansas, they had dated for three months before getting engaged, they lived together, and he had offered her no compensation to marry him except "mutual understanding."

Moniruzzaman was charged by indictment with entering into a false marriage for the purpose of evading immigration laws, in violation of 8 U.S.C. § 1325(c); conspiring with Islam to enter into a false marriage for the purpose of evading immigration laws, in violation of 8 U.S.C. § 1325(c) and 18 U.S.C. § 371; and conspiring with Islam to provide false statements, in violation of 18 U.S.C. §§ 371, 1001. He was tried together with Islam and convicted by a jury on all three counts. This appeal followed.

## III.  DISCUSSION

Moniruzzaman first challenges the district court's refusal to give a cautionary instruction to the jury. His request for the instruction was prompted

by the testimony of Agent Byrd. During his direct examination, Byrd stated his job duties involved reviewing applications filed by individuals seeking both permanent residency and citizenship in the United States and determining their eligibility. He testified it was part of his job to be aware of the legal standards that apply to such applications and, pursuant to Section 204(c) of the Immigration and Nationality Act (8 U.S.C. § 1154(c)), he could not approve a petition if it was "determined that the marriage—the qualifying marriage was entered into for the purpose of evading immigration laws." Moniruzzaman argued before the district court that Byrd's testimony could mislead the jury into believing Byrd, and not the court, was the source of the law to be applied in the case. Accordingly, Moniruzzaman requested the court give the following cautionary instruction:

> Daniel Byrd, an employee of the Bureau of Citizenship, testified regarding certain laws that governed his jobs and about certain findings he made as part of his job, you are advised that this Court is the sole source of the law that applies to this case and you are the sole judges of the facts, the conclusion of the witness concerning his interpretation of the law and facts should be disregarded by the jury.

The district court refused to give the instruction and Moniruzzaman alleges error in that decision.

This court reviews a district court's refusal to give a requested instruction for abuse of discretion but reviews the instructions as a whole *de novo* to determine whether they correctly and adequately state the applicable law. *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152 (10th Cir. 1999). If "the charge

as a whole adequately states the law, the refusal to give a particular instruction is not an abuse of discretion." *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990). Although the district court refused to give the instruction proposed by Moniruzzaman, it did instruct the jury as follows:

> Although you as jurors are the sole judges of the facts, you are duty bound to follow the law as stated in the instructions of the court and to apply the law so given to the facts as you find them from the evidence before you.
> . . .
> Regardless of any opinion you may have as to what the law ought to be, it would be a violation your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the court.

This instruction properly informed the jury the court's instructions were the sole source of the applicable law. Thus, it conveyed essentially the same information to the jury as that contained in the instruction proposed by Moniruzzaman. The mere fact the court refused to use the exact language requested by Moniruzzaman does not constitute error. A defendant is entitled only to an instruction that correctly states the law; he is not entitled to a particularly worded instruction. Upon *de novo* review of the record, we conclude the instructions given by the district court fairly and adequately informed the jury on the governing issues and the legal standards to apply. Accordingly, the district court did not abuse its discretion by refusing to give the instruction proposed by Moniruzzaman.

Moniruzzaman next challenges the district court's ruling admitting into evidence the recording of the December 2 meeting between Revell, Islam, and

Moniruzzaman. This court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Jenkins*, 313 F.3d 549, 559 (10th Cir. 2002). The recording was admitted over Moniruzzaman's objection that it was inadequately authenticated under Rule 901 of the Federal Rules of Evidence. Specifically, Moniruzzaman argued the government failed to lay a proper foundation for the admission of the recording because Agent Lovesee testified he was not familiar with the voices of Islam and Moniruzzaman and distinguished between them only by context.

Rule 901 permits lay opinion testimony as a foundation for voice identification if that opinion is "based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Fed. R. Evid. 901(b)(5). Revell testified the voices on the recording were those of herself, Islam, and Moniruzzaman. She further testified the recording was an accurate recording of the conversation. Lovesee testified he did not know Moniruzzaman's voice, but was able to distinguish between Islam and Moniruzzaman on the recording by the context of the conversation. Lovesee further explained,

> Well, to our knowledge there were three people only speaking. One of the three was [Revell], so we knew it to be [Revell] speaking. The other two were [Moniruzzaman] and [Islam] and I went by the context of the interview of who was speaking about what and I figured out who was speaking.

The district court did not abuse its discretion when it admitted the recording. Revell's testimony alone was sufficient to lay the necessary

foundation. Lovesee never testified as to the substance of the conversation.

Instead, the recording was played for the jury. Thus, Lovesee's inability to

conclusively distinguish Islam's voice from Moniruzzaman's is irrelevant to the

question of whether the recording was properly admitted. The jury was able to

determine for themselves what was said and who was speaking.

In a related argument, Moniruzzaman asserts the district court erred by

admitting a transcript Lovesee prepared from the recording of the December 2

meeting. The transcript was played for the jury by means of a scrolling video as

the recording was played. According to Moniruzzaman, permitting the jury to

consider Lovesee's opinion regarding who was making particular statements

during the conversation amounted to permitting inadmissible expert opinion.

Prior to permitting the jury to see the transcript, the district court instructed

them as follows:

> It is important, however, that you understand that in this case the
> tape is evidence and the transcript is not evidence. If you perceive
> any variations between what you hear and what you read, you must
> be guided solely by the tape and not the transcript. If you cannot
> determine from the tape whether particular words are spoken or who
> is speaking them, you must disregard the transcript insofar as those
> words are concerned. The transcript is intended only to be an aid to
> you. You are given the direction to decide whether to use a
> transcript or not. You have the discretion to do so.

"The admission of transcripts to assist the trier of fact . . . lies within the

discretion of the trial court." *United States v. Devous*, 764 F.2d 1349, 1354 (10th

Cir. 1985). This court has previously held that a district court does not commit

error by admitting a transcript if a proper cautionary instruction is given to the jury. *United States v. Davis*, 929 F.2d 554, 559 (10th Cir. 1991); *United States v. Lucero*, 601 F.2d 1147, 1149-50 (10th Cir. 1979). Here, the district court clearly and explicitly instructed the jury to disregard the transcript if they could not determine for themselves from the recording what words were being spoken or who was speaking them. In light of the detailed cautionary instruction given in this case, we conclude Moniruzzaman's argument the district court abused its discretion when it admitted the transcript has no merit.

Moniruzzaman next argues a comment made by the government during closing argument amounted to prosecutorial misconduct. During closing argument, Islam's counsel objected[1] when the prosecution made the following statement,

> Folks, they say that this is the wrong forum for this and, you know, we shouldn't be here, we should be over at INS. Well, look, we have those immigration laws for a reason and we have them in this country at this time it's more important than any other time in probably our history.

Moniruzzaman seeks a reversal of his conviction, asserting this comment was an improper reference to his race and religion and was made for the sole purpose of reminding the jury of "the on-going 'war on terror.'"

---

[1]The objection was phrased as follows: "I object to that. I think that calls for the wrong conclusion for this jury to reach." Counsel did not move for a mistrial.

"When defense counsel contemporaneously objects to a prosecutor's comment at trial and moves for a mistrial, we review a district court's decision to deny his motion for abuse of discretion." *United States v. Kravchuk*, 335 F.3d 1147, 1153 (10th Cir. 2003). The government argues the issue should be reviewed for plain error because it was Islam, not Moniruzzaman, who objected when the comment was made. It is unnecessary for us to decide whether the plain error standard applies because we conclude the comment was not improper. A review of the record reveals the prosecutor's comment was made in response to Islam's earlier argument that the defendants had committed no federal crime and their immigration status should be decided solely by Homeland Security. Islam's counsel had stated:

> You've heard testimony that there are proceedings going on in this courtroom and that there are other proceedings going on with INS concerning [the] status of these foreign nationals. Ladies and gentlemen, I would ask you, based on the evidence that you've heard, that we're in the wrong place. These questions belong in that other forum. That immigration naturalization service administrative thing that's trying to sort out what's going on. But these young men have not committed a federal crime for which they should be convicted.

"When a prosecutor responds to an attack made by defense counsel, we evaluate that response in light of the defense argument." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998) (quotation omitted). Placed in context, the prosecutor's statement is revealed to be nothing more than a benign response to

Islam's assertion the federal courts were an inappropriate forum to decide the immigration status of Moniruzzaman and Islam.

Finally, Moniruzzaman challenges another of the district court's evidentiary rulings. The challenged testimony involved the following exchange between Revell and the prosecution:

> Q. Did you ever live together with [Moniruzzaman] as man and wife?
> A. No.
> Q. Did you ever intend to live with him as man and wife?
> A. No.
> Q. As far as you knew from your relationship with Mohammad Moniruzzaman, did he ever intend to live with you as man and wife?
> A. No.

Moniruzzaman objected to the last question, stating, "Object to the form of the question, that's conclusionary [sic]. He can ask what was said, but that calls for a conclusion." The district court overruled the objection and Moniruzzaman now asserts the testimony was admitted in violation of Rule 701 of the Federal Rules of Evidence.

Rule 701 permits the admission of lay opinion testimony that is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *United States v. Bush*, 405 F.3d 909, 915-16 (10th Cir. 2005). Moniruzzaman argues Revell's opinion is not rationally

based on her perceptions because she only met him a few times and had very little interaction with him. He also asserts her opinion was not helpful to the jury because they were free to draw their own conclusion about his intention from the evidence presented.

The district court did not abuse its discretion when it permitted the testimony. As Moniruzzaman himself concedes, Revell testified the arrangements for the wedding were all made by Islam, she did not meet him until the day of the ceremony, and following the ceremony she had very little interaction with him. Although Moniruzzaman argues Revell's limited contact with him demonstrates her testimony was not rationally based on her perceptions of him, these facts conversely provide a solid foundation for Revell's opinion that Moniruzzaman did not intend to live with her as man and wife. Further, the testimony was helpful in the determination of a fact in issue, *i.e.*, whether Moniruzzaman entered into the marriage without intending to live with Revell as man and wife.[2]

---

[2]Moniruzzaman also argues his convictions must be vacated because the cumulative effect of all the alleged errors denied him a fair trial. This argument can be quickly rejected because we have concluded no actual errors were committed. *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998) ("Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors.").

## IV.   CONCLUSION

For the reasons stated above, Moniruzzaman's convictions are **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge