**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

GERARDO RESENDIZ-PATINO,

  Defendant-Appellant.

No. 03-2191

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-01-1589 BB)**

---

Submitted on the briefs:

David C. Iglesias, United States Attorney, and Norman Cairns, Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

Herman E. Ortiz, Garfield, New Mexico and Raymond P. Moore, Federal Public Defender, and Jill M. Wichlens, Assistant Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

---

Before **SEYMOUR, LUCERO** and **O'BRIEN**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On February 13, 2002, a jury convicted Gerardo Resendiz-Patino of possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1). The statutory penalty for the offense requires imprisonment for not less than five nor more than forty years. *See* 21 U.S.C. § 841(b)(1)(B)(ii)(II). On August 6, 2003, Resendiz-Patino was sentenced to 121 months imprisonment. He appeals, challenging his conviction on the ground the district court committed reversible error in admitting hearsay evidence at trial and challenging his sentence on the ground it violates the rule announced in *United States v. Booker*, -- U.S. --, 125 S.Ct. 738, 746 (2005) (invalidating the federal sentencing guidelines insofar as they are mandatory). Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM.

## I.    BACKGROUND

*Factual*

On September 4, 2001, Resendiz-Patino, en route from Juarez, Mexico, to Albuquerque, New Mexico, stopped at a border checkpoint near Las Cruces, New

Mexico, and permitted authorities to search his vehicle. During the search, a drug dog alerted to the vehicle's battery. Authorities removed the battery (which was not examined for fingerprints) and discovered 3.973 kilograms of cocaine hidden inside it. In the vehicle, authorities discovered a wrench that fit the nuts of the battery cables and a red felt protector for a battery cable. There appeared to be new cables attached to the battery. Authorities also discovered that a motorcycle battery had been wired to the vehicle's battery. In the trunk, they located a set of Craftsmen tools. Although Resendiz-Patino owned the vehicle in which he was stopped, was traveling alone at the time and stated he was the only person who drove or otherwise possessed the vehicle, he testified he had no knowledge of the cocaine. He also denied ownership of the tools found in his vehicle. He shifted responsibility for the cocaine to his girlfriend, whom he had been visiting earlier that day in Juarez, and her cousin, who occasionally performed mechanical work on Resendiz-Patino's vehicle.

### *Procedural*

The Presentence Investigation Report (PIR)[1] calculated a base offense level of 30 based on Resendiz-Patino's relevant conduct.[2] *See* USSG §2D1.1(c)(5)

---

[1] The PIR utilized the November 2001 edition of the United States Sentencing Commission's *Guidelines Manual*. Unless noted otherwise, all references to the guidelines are to this edition.

[2] "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* §1B1.3(a)(2) (Relevant

(providing for a base offense level of 30 when offense involves at least 3.5 kilograms but less than 5 kilograms of cocaine). It also recommended a two level enhancement for obstruction of justice on the ground Resendiz-Patino testified falsely at trial. *See* USSG §3C1.1. With a total offense level of 32 and a criminal history category of I, the applicable sentencing range was 121 to 151 months imprisonment. The district court found Resendiz-Patino possessed 3.88 kilograms of cocaine[3] and obstructed justice by his testimony at trial. It sentenced

Conduct)." USSG §2D1.1, comment. (n.12). USSG §1B1.3(a) provides in part:

> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level . . . shall be determined on the basis of the following:
>
> (1)   (A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . .
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> (2)   solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivision[] (1)(A) . . . above that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]

[3] The parties stipulated at trial that 3.973 kilograms of a mixture or substance containing a detectable amount of cocaine was seized from the battery in Resendiz-Patino's vehicle. The PIR indicated likewise. The record is unclear why the court at sentencing found the amount to be 3.88 kilograms. Inasmuch as USSG §2D1.1(c)(5) provides for a base offense level of 30 when the offense

Resendiz-Patino to 121 months imprisonment, the low end of the applicable guideline range.

## II.    DISCUSSION

### *Hearsay Objection*

When the authorities removed the battery containing the cocaine from Resendiz-Patino's vehicle, they made no effort to examine it for latent fingerprints, even though the hard plastic sheath for the battery was a surface from which fingerprints might have been obtained.  The case agent testified at trial on redirect examination that one reason he did not submit the battery sheath for fingerprint analysis was that other agents had informed him in the past that oftentimes the fingerprints on containers of controlled substances are smudged and unidentifiable:

> Q.    Are you saying that the DEA [Drug Enforcement Agency] task force never submits packaging or wrappings for fingerprinting to the South Central Lab?
>
> A.    No.  I said I never have.
>
> Q.    Are you aware whether attempts have been made in other cases from the DEA task force?
>
> A.    Yes.

---

involves at least 3.5 kilograms but less than 5 kilograms of cocaine, the disparity between the stipulation and the PIR calculation, on the one hand, and the court's finding, on the other hand, is immaterial.

Q.  Do you know of any times when fingerprints have come back?

A.  No.  In my experience, from my talking to other agents, they've . . . .

MR. HARRIS:  Objection, Your Honor.  He's testifying to hearsay.

THE COURT:  No, overruled.  Go ahead.

A.  They've told me that prints have come back inconclusive.

Q.  It's hard to get a full print that you can actually categorize?

A.  Yes.

Q.  You get smudges or parts of prints?

A.  Yes.

(R. Vol. III at 136-37.)  Resendiz-Patino contends the agent's testimony as to what other agents had told him about obtaining fingerprints from drug packaging or wrappings was inadmissable hearsay, and it was an abuse of discretion and reversible error for the court to admit it.

Hearsay, defined by FED. R. EVID. 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[,]" is generally inadmissible.  *See* FED. R. EVID. 802.  However,

[e]videntiary rulings are committed to the discretion of the trial court and are reviewed only for abuse of discretion.  While we review evidentiary rulings by considering the record as a whole, deference to the trial judge is heightened when reviewing rulings on hearsay

-6-

questions. This court applies a harmless error standard when reviewing trial courts' rulings on hearsay objections resting solely on the Federal Rules of Evidence. A harmless error is one that does not have a substantial influence on the outcome of the trial; nor does it leave one in grave doubt as to whether it had such effect.

*United States v. Jones,* 44 F.3d 860, 873 (10th Cir. 1995) (internal citations omitted). *See also* FED. R. CRIM. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). We avoid deciding whether or not the challenged testimony was hearsay and whether the district court abused its discretion in admitting it, because the error in admitting it, if any, was harmless.

The gist of Resendiz-Patino's defense was that he was unaware of the presence of cocaine in his vehicle's battery. *See* 21 U.S.C. § 841(a)(1) (requiring knowing or intentional possession to sustain conviction). Had the jury believed him, he would have been acquitted. It did not. Without the case agent's objected-to explanation for his failure to submit the battery sheath for fingerprint analysis, the jury would have been left with three equally plausible inferences that could be drawn from the evidence: 1) there were no recoverable fingerprints on the battery sheath; 2) there were recoverable fingerprints on the battery sheath that belonged to Resendiz-Patino; or 3) there were recoverable fingerprints on the battery sheath that did not belong to Resendiz-Patino.

The first inference is benign and would not have had any influence on the

outcome of the trial. The second inference would not have lessened (and indeed would have added to) the otherwise overwhelming evidence of Resendiz-Patino's guilt. The third inference would not have eliminated the possibility that Resendiz-Patino was in league with another person or persons in cocaine trafficking.[4] On the basis of the foregoing, we conclude the case agent's explanation for his failure to submit the battery sheath for fingerprint analysis did not have a substantial influence on the outcome of the trial. Therefore, the admission of the explanation, if error, was harmless.

### *Sentence*

In *Booker*, the Court invalidated the federal sentencing guidelines insofar as they were mandatory. 125 S.Ct. at 746. The Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. The Court concluded the guidelines would not offend the Constitution if advisory only. *Id.* at 749-50. To this end, in the remedial portion of its opinion, the Court excised those provisions mandating application of the guidelines. *Id.* at 756-57. The Court indicated its decision was applicable to all

---

[4] Perhaps this is why defense counsel did not argue in closing argument that the failure to examine the battery sheath for fingerprints tended to establish Resendiz-Patino's innocence.

cases, like this one, on direct review. *Id.* at 769.

Applying *Booker,* we have stated:

> there are two distinct types of error that a court sentencing prior to *Booker* could make. First, a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily. As *Booker* makes clear, the Sixth Amendment prohibits this practice. As a matter of convenience, we will refer to such an error as a constitutional *Booker* error. Second, a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction. While this type of sentence does not violate the Sixth Amendment, such a sentence is nonetheless impermissible because the Court severed the portion of the Sentencing Reform Act that required the mandatory application of the Guidelines. We will refer to this second type of error as a non-constitutional *Booker* error.

*United States v. Gonzalez-Huerta,* 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc) (internal quotation marks and citations omitted). Irrespective of the type of error involved, *Booker* does not necessitate a remand for resentencing in all instances. Instead, "reviewing courts [are] to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the plain-error test." *Booker,* 125 S.Ct. at 769 (internal quotation marks omitted).

We must first determine whether we face constitutional or non-constitutional *Booker* error. In this case, the record reflects the court found the facts necessary to support the relevant conduct drug quantity determination, *see* USSG §2D1.1(c)(5) (providing for a base offense level of 30 when offense

involves at least 3.5 kilograms but less than 5 kilograms of cocaine), and the obstruction of justice enhancement. *See* USSG §3C1.1 (providing a two level enhancement for obstruction of justice). The Government concedes this is constitutional *Booker* error. The Government is too quick to concede the point, and we disregard its concession. *See United States v. Harrold,* 796 F.2d 1275, 1279 (10th Cir. 1986) (we may disregard ill-considered Government concession of constitutional error).

The record demonstrates Resendiz-Patino stipulated at trial that 3.973 kilograms of a mixture or substance containing a detectable amount of cocaine was seized from the battery in his vehicle. The contested issue at trial was possession, not quantity. For *Booker* purposes, Resendiz-Patino's stipulation at trial constituted an admission to the quantity of cocaine involved in his offense. In light of this admission, the district court's relevant conduct quantity determination was superfluous, and *Booker's* constitutional holding was not implicated. *See Booker*, 125 S.Ct. at 756.

Nor did the district court's imposition of the obstruction of justice enhancement contravene *Booker's* constitutional holding. This is so because, without the two-level enhancement for obstruction of justice, Resendiz-Patino's total offense level would have been 30. Together with a criminal history category of I, this would have resulted in a sentencing range of 97 to 121 months

imprisonment. Inasmuch as Resendiz-Patino was sentenced to 121 months imprisonment, there was no constitutional *Booker* error in the obstruction of justice enhancement. *See United States v. Yazzie,* 407 F.3d 1139, 1144 (10th Cir. 2005) (en banc) ("*Booker* made clear that it is the actual sentence, not the sentencing range, that must not be increased based upon judge-found facts in order to violate the Sixth Amendment[.]"). Based on the foregoing, we conclude there was only non-constitutional *Booker* error in Resendiz-Patino's sentence due to the fact he was sentenced under a mandatory guidelines regime.

Resendiz-Patino concedes he did not interpose a *Booker* objection at sentencing and our review is for plain error.[5] "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta,* 403 F.3d at 732 (internal quotation marks omitted). We enjoy discretion to notice plain error. *See* FED. R. CRIM. P. 52(b). In this case, there is no doubt there is error that is plain, and, as a result, the first two prongs of the plain error test are satisfied. *See United States v. Clifton,* 406 F.3d 1173, 1181 (10th Cir. 2005) ("Non-constitutional and constitutional *Booker*

_____

[5] Resendiz-Patino contends his sentencing under a mandatory guidelines scheme amounts to structural error. We have held otherwise. *See United States v. Dowlin,* 408 F.3d 647, 668 (10th Cir. 2005) (constitutional *Booker* error is not structural); *Gonzalez-Huerta,* 403 F.3d at 734 (non-constitutional *Booker* error is not structural).

errors satisfy the first two prongs of the plain-error test."). We thus limit our review to the third and fourth prongs of the plain error test.

"Satisfying the third prong of plain-error review--that the error affects substantial rights--usually means that the error must have affected the outcome of the district court proceedings." *Gonzalez-Huerta,* 403 F.3d at 732 (internal quotation marks omitted). "To meet this burden, the appellant must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted). We avoid determining whether Resendez-Patino satisfies the third prong of the plain error test and proceed directly to a determination of whether he has satisfied the fourth prong of the test. *See id.* at 736 (no need to determine if third prong of plain error test is satisfied if, assuming it is, fourth prong of test is not satisfied).

"Under the fourth prong of plain-error review, . . . we will not notice a non-constitutional [*Booker*] error . . . unless it is both particularly egregious and our failure to notice the error would result in a miscarriage of justice." *Id.* (internal quotation marks omitted). Resendiz-Patino bears the burden of meeting this demanding standard. *See id.* at 737. For several reasons, we determine he has not satisfied it. First, the error is not of constitutional dimension but only violates the remedial portion of *Booker*. *See id.* at 738 ("[T]he District Court's erroneous--although not constitutionally erroneous--mandatory application of the

Guidelines is not particularly egregious or a miscarriage of justice."). Second,

Resendiz-Patino's sentence is within the national norm for sentences as

established by the sentencing guidelines. *See id.* ("Even though district courts

now have discretion in sentencing, they must consider the Guidelines (i.e., the

national norm) when sentencing."). Finally, there is no evidence in the record

that would lead us to reasonably conclude the district court would impose a

sentence outside the guideline range under a post-*Booker* advisory regime.[6]  *See*

---

[6] Relieved of the mandatory application of the guidelines by *Booker*, district courts are now permitted to give more sway in sentencing to the factors enumerated in 18 U.S.C. § 3553(a). *See Booker*, 125 S.Ct. at 757.

Section 3553(a) provides:

**Factors to be considered in imposing sentence**. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed –

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the

*id.* at 738-39. The court's comments in declaring sentence evidence the contrary: "You know, I would feel much more charitable toward you if I could believe any part of your story, which I don't." (R. Supp. Vol. II at 12.) Therefore, we conclude Resendiz-Patino has failed to satisfy the plain error test for non-constitutional *Booker* error.

---

        defendant; and

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for –

      (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

(5)    any pertinent policy statement –

      (A)    issued by the Sentencing Commission . . . .

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## III.  CONCLUSION

We AFFIRM the judgment of the district court.


Judge Lucero concurs in the result.