**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SIGIFREDO SAENZ,

Defendant-Appellant.

No. 06-3320

(D. of Kan.)

(D.C. No. 05-CR-10245-JTM)

**ORDER AND JUDGMENT***

Before **TACHA**, Chief Judge, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

Sigifredo Saenz appeals his conviction on three counts of distributing methamphetamine and one count of conspiracy to distribute methamphetamine. He argues that the district court committed reversible error by admitting testimony from a police officer that a non-testifying co-conspirator implicated Saenz in the conspiracy. This testimony, he claims, violated his rights under the Confrontation Clause of the Sixth Amendment and was otherwise inadmissible hearsay.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

We find no reversible error and AFFIRM the district court.

## I. Background

In October 2005, the Drug Enforcement Administration (DEA) in Wichita, Kansas was contacted by a cooperating source (CS) and began investigating possible methamphetamine trafficking activities in the area, specifically north of Wichita in Newton, Kansas. A DEA task force began conducting drug buys and surveilling suspected co-conspirators. These initial activities focused police attention on Saenz's residence and the Newton Radiator Shop, which appeared to be the source of the drugs. Jose Lara owned the radiator shop.

As part of the operation, the CS along with a DEA undercover agent contacted Howard Richey, the initial target of the investigation, to set up the purchase of a half-pound of methamphetamine. Richey arranged to involve an associate, Gabriel Eggleston, in the transaction.

On November 14, Richey called the CS and informed him he was driving to "his guy's house." Police observed Richey arrive at Saenz's residence, enter, and leave a short time later. At this point, Richey called the CS to tell him the transaction would have to take place later, and Richey returned to his apartment. Richey left his apartment later that day with Eggleston, and the two returned to Saenz's house. The men left Saenz's house with Richey and Eggleston in one car and Saenz in another. They all drove to the Newton Radiator Shop and stayed about twenty minutes. That evening, Richey told the CS by phone that he had the

drugs but could not weigh them accurately, so they would have to make the exchange the next day.

The transaction did not take place on November 15 either. But police observed Richey meet with Eggleston at Richey's apartment, and later both met at Eggleston's residence and then drove separately to a grocery store in Newton where they again rendezvoused. Meanwhile, officers stopped Eggleston's car and performed a canine drug search. Although the dog gave a positive response, officers did not find any drugs. Eggleston later said he knew he was being followed and had dropped the drugs off with Justin Lehrman, another co-conspirator. Lehrman corroborated Eggleston's testimony at trial. Also on November 15, officers executed a search warrant for Saenz's residence. They recovered three small bags of methamphetamine, a scale, and several rounds of ammunition.

Officers finalized the drug transaction with Eggleston on November 16. The undercover DEA agent called Eggleston and arranged for him to leave the drugs on the front passenger seat of a car parked in a Wal-Mart parking lot. Officers observed Eggleston and Lehrman leave Eggleston's apartment and drive to Lehrman's house. They observed Eggleston and Lehrman go into the house and then leave in separate cars and drive to Wal-Mart. Eggleston and Lehrman parked and entered the store. Officers recovered the drugs from Lehrman's car and then arrested both Eggleston and Lehrman as they left Wal-Mart. Both men

agreed to cooperate and gave statements implicating Saenz. Richey was also arrested on November 16 and later implicated Saenz in the conspiracy.

Saenz was arrested on November 17. That same day, officers searched the Newton Radiator Shop. They found aluminum foil containing cocaine and a plastic bag containing cocaine in a trash can. Officers interviewed the owner, Jose Lara, and Lara also implicated Saenz.

Evidence collected during the investigation and surveillance, including pictures, videotape, and telephone conversations, were all admitted against Saenz at trial. Furthermore, testimony from Richey, Eggleston, and Lehrman established Saenz sold methamphetamine to Richey who sold it to other distributors. Richey testified that Saenz would go to Texas about once a week and return with methamphetamine. When Saenz left town, he would leave the methamphetamine for Richey at the Newton Radiator Shop.

Casey Watkins, a narcotics officer for the Newton Police Department, also testified at trial about the officers' search of the radiator shop. On cross examination, defense counsel asked Watkins a number of questions focusing on the responsibility of Jose Lara for the drugs found at the shop. On redirect examination, the following exchange took place between the prosecutor and Watkins regarding the information provided by Jose Lara:

> [PROSECUTOR]: Did he implicate anyone in this investigation?
> [DEFENSE COUNSEL]: I object. Calls for hearsay.
> [PROSECUTOR]: He opened the door, Your Honor.

THE COURT: It's overruled.

[DEFENSE COUNSEL]: Your Honor --

THE COURT: No, Mr. Gradert. It's overruled. He can answer the question.

[PROSECUTOR]: Did he implicate anyone in this investigation?

[WATKINS]: Yes, ma'am.

[PROSECUTOR]: Who?

[WATKINS]: Sigifredo Saenz.

R. Vol. V at 356.

Jose Lara did not testify at the trial.

## II. Discussion

Saenz argues the Watkins testimony implicating him in the conspiracy should not have been admitted into evidence, under two theories. First, the testimony violated his right under the Confrontation Clause of the Sixth Amendment to be confronted by the witnesses against him, and, second, the testimony is inadmissible hearsay.

### A. Confrontation Clause

Under the Sixth Amendment, a criminal defendant has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), created a new standard for the admissibility of hearsay evidence that implicates the Confrontation Clause. Under *Crawford,* "testimonial" out-of-court statements are barred at trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant about those statements. *Id*. at 67.

Though the Supreme Court has not yet defined the outer limits of "testimonial" statements, in *Crawford* it included as testimonial hearsay "[s]tatements taken by police officers in the course of interrogations." *Id.* at 52. And we have clarified that a statement is testimonial "if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005).

The government does not argue that Lara's statements implicating Saenz were not testimonial, so we assume that *Crawford* applies for purposes of this discussion. Nor does the government argue that Lara was unavailable to testify or that Saenz had an opportunity to cross-examine him. But even assuming an error occurred under *Crawford* when the district court admitted the testimony, we still must assess the effect of the evidence on Saenz's conviction.

Saenz concedes that he did not object to the testimony on Confrontation Clause grounds at trial. Where a defendant fails to explicitly object on Confrontation Clause grounds, we review the constitutional issue for plain error. *United States v. Solomon*, 399 F.3d 1231, 1237–38 (10th Cir. 2005) (holding hearsay objection does not encompass Confrontation Clause objection). Nevertheless, because Saenz alleges constitutional error and his counsel mitigated the failure to object on Confrontation Clause grounds by objecting on related hearsay grounds, we will apply the plain error rule less rigidly and closely

scrutinize the record. *See United States v. Magallanez*, 408 F.3d 672, 683 (10th Cir. 2005); *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir. 1991).

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (internal quotations omitted). Generally, an error affects substantial rights only if it "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993) (discussing the plain error standard in Fed. R. Crim. P. 52(b)); *United States v. Portillo-Vega*, 478 F.3d 1194, 1202 (10th Cir. 2007) (quoting *Gonzalez-Huerta*, 403 F.3d at 732–33 (10th Cir. 2005)). And even when a plain error affects the outcome of a trial, under the fourth element the defendant still bears the burden of showing that an exercise of our discretion is necessary to correct the error because of its serious effect on the integrity of the proceedings. *United States v. Dazey*, 403 F.3d 1147, 1178 (10th Cir. 2005).

Saenz contends that Watkins's testimony affected his substantial rights and seriously affected the fairness, integrity, and public reputation of the proceedings against him. We disagree.

As to the substantial rights prong, the government offered ample evidence to convict Saenz even without the challenged statement. Three co-conspirators testified at trial and implicated Saenz in the methamphetamine conspiracy. These

witnesses purchased large amounts of methamphetamine from Saenz and through Saenz's distributor which they then redistributed to other buyers. Additional evidence from law enforcement officers about the surveillance and the observed drug transactions included pictures, videotapes, and telephone conversations, all of which established Saenz's role in the conspiracy. In context, the brief statement in redirect examination that Lara implicated Saenz was cumulative and added nothing substantive to the evidence against him.

Saenz suggests the challenged testimony was particularly prejudicial because the jury would give additional weight to Lara implicating Saenz in the conspiracy because of a family relationship. Although Saenz does not indicate where evidence of the relationship was introduced at trial since the witnesses questioned about the relationship denied knowing exactly how Lara and Saenz were related, Saenz asserts Lara is related to his wife. But given the substantial evidence offered against Saenz, an undefined family relationship between Lara and Saenz's wife carries little weight. Even considering the unsubstantiated family relationship, the unelaborated statement by the officer has minimal significance when balanced against the specific details of the conspiracy offered by the testifying co-conspirators and the investigating officers. In sum, the admission of Officer Watkins's statement did not affect the outcome of the trial.

Even if the error had some effect on Saenz's substantial rights, it still would not satisfy the fourth prong of plain error review. The fourth prong

requires that the error draw into question the integrity, fairness, or public reputation of judicial proceedings. The admitted statement does not rise to this level. We have already discussed the relative insignificance of the challenged testimony in the larger context of the trial. An objective public observer would hardly consider the proceedings unfair. *See United States v. Perez*, 989 F.2d 1574, 1583 (10th Cir. 1993) (noting that even constitutional errors are not prejudicial per se).

Admission of the testimony in violation of *Crawford* therefore did not affect Saenz's substantial rights or implicate the integrity of his trial. Accordingly, the district court committed no plain error.

**B. Hearsay**

Saenz also argues that the challenged testimony was inadmissible hearsay under the Federal Rules of Evidence. Saenz objected on hearsay grounds at trial, and we "appl[y] a harmless error standard when reviewing trial courts' rulings on hearsay objections resting solely on the Federal Rules of Evidence." *United States v. Resendiz-Patino*, 420 F.3d 1177, 1181 (10th Cir. 2005). We will again assume that admitting the testimony was error.

An error is harmless if it "does not have a substantial influence on the outcome of the trial; nor does it leave one in grave doubt as to whether it had such effect." *Id.* Under harmless error analysis, unlike review for plain error, the government bears the burden of persuasion with respect to whether the

defendant was prejudiced by the error. *Olano*, 507 U.S. at 734. Having carefully reviewed the entire record, for the reasons discussed above we are satisfied that the error did not affect the outcome of the trial.

In short, Saenz would have been convicted even if Watkins had not referred to Lara's out-of-court statement.

### III. Conclusion

Because we find no reversible error, we AFFIRM the district court.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge