**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARY GONZALES,

    Defendant - Appellant.

No. 21-2099
(D.C. No. 1:19-CR-00240-KWR-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

A jury found Mary Gonzales guilty of four felony offenses: possessing methamphetamine and heroin with intent to distribute, possessing a firearm in furtherance of a drug-trafficking crime, and possessing a firearm as a felon. On appeal, Gonzales mainly argues that the district court erred by not suppressing two incriminating statements she made to the police before receiving the warnings recited in *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). We need not decide the *Miranda* issue, because we conclude that any error was harmless beyond a reasonable doubt. We thus affirm her conviction and sentence.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

### I. Factual Background

Socorro County Sheriff's Deputy Richard Lopez received information that on June 7, 2018, Mary Gonzales would be delivering methamphetamine to a certain house in Socorro, New Mexico. Javier Martinez, a known drug dealer, lived in the house. On the afternoon of June 7, as Deputy Lopez was surveilling the area in response to the tip, he saw Gonzales arrive at Martinez's house in her truck. Deputy Lopez rushed from his vehicle to get a better look. From behind a neighbor's fence about forty to fifty yards away, he saw Veronica Soto-Paz, Martinez's girlfriend, interact with Gonzales at her truck for about thirty seconds. From what Deputy Lopez could see, he believed that a drug transaction had just occurred.

When Gonzales drove away, Deputy Lopez returned to his patrol vehicle, pursued her, and stopped her. He approached Gonzales's truck and asked her to step out; she complied. He confronted Gonzales by telling her a lie—that he had a source in Martinez's house who told him Gonzales was dealing drugs. Deputy Lopez observed a plastic bag sticking out of her shirt. Believing that the bag contained drugs, Deputy Lopez ordered her to give it to him. As directed, Gonzales handed Deputy Lopez the bag, acknowledging that "[i]t's in my shirt." R. vol. III, at 114. The bag appeared to contain methamphetamine; chemists later determined that it contained 10.68 grams of pure methamphetamine. Sometime during the brief conversation, Gonzales disclosed to Deputy Lopez that she had to "drop off," which Deputy Lopez took to mean delivering drugs. *Id.* at 149–50.

2

Deputy Lopez then handcuffed Gonzales and asked if she had any other drugs. Though handcuffed, she managed to reach inside the truck and hand Deputy Lopez a small pouch containing 48.3 grams of pure methamphetamine, 24.61 grams of heroin, some prescription Suboxone strips, a digital scale, and a glass methamphetamine pipe. With Gonzales's consent, Deputy Lopez searched her purse and found a loaded .22 caliber revolver. Even after Gonzales made two incriminating statements—that she had to "drop off" and that the plastic bag of methamphetamine was "in [her] shirt"—she continued making incriminating statements during the roadside stop without receiving *Miranda* warnings. Only at the police station did Deputy Lopez read Gonzales those warnings. She made more incriminating statements there.

A federal grand jury later indicted Gonzales for possession with intent to distribute fifty grams or more of methamphetamine under 21 U.S.C. § 841(a)(1), possession with intent to distribute heroin under § 841(a)(1), felon in possession of a firearm under 18 U.S.C. § 922(g)(1), and possessing a firearm in furtherance of a drug-trafficking crime under § 924(c)(1)(A)(i).

## II.    Procedural Background

Gonzales filed two pretrial motions to suppress. In her first motion, she argued that Deputy Lopez lacked reasonable suspicion to pull her over. After a hearing, the district court denied this motion.[1] In her second motion, Gonzales sought to suppress

---

[1] Gonzales does not challenge this ruling, and we express no opinion whether the stop was valid without an observed traffic violation.

3

her roadside statements to Deputy Lopez as *Miranda* violations; her post-*Miranda* statements at the station as involuntary under the Fifth Amendment; and the drugs, firearm, and any testimony about them as fruit of the poisonous tree.

The district court held an evidentiary hearing on the second motion to suppress and afterward granted the motion in part and denied it in part. The court suppressed Gonzales's roadside statements made after the handcuffing and her statements at the police station.[2] But it declined to suppress the drugs, the firearm, or Gonzales's roadside statements before she was handcuffed. The court determined that Gonzales was not in custody before being handcuffed, ruling out any asserted *Miranda* violation.

At trial, the government called four witnesses: Deputy Lopez, two Drug Enforcement Administration (DEA) chemists, and an FBI agent. Deputy Lopez testified about the events from June 7, 2018. He related the inside information that Gonzales would be delivering drugs at Martinez's house that day, described the interaction between Gonzales and Soto-Paz, and recounted the traffic stop and Gonzales's handing him the two bags containing methamphetamine and heroin. During his testimony, Deputy Lopez also identified the two samples of methamphetamine, the heroin, the revolver, and the ammunition from the revolver.

---

[2] The district court suppressed Gonzales's police-station statements as involuntary confessions because Deputy Lopez made coercive, misleading promises of leniency.

On cross-examination, the defense questioned him about seeing Soto-Paz at Gonzales's truck and about his location during the surveillance. After defense counsel suggested that the Suboxone strips (used to treat heroin addiction) and methamphetamine pipe meant the drugs were for Gonzales's personal use, Deputy Lopez testified on redirect examination that drug dealers typically use drugs. Not until redirect did Deputy Lopez reference Gonzales's roadside statement about dropping off. The prosecutor asked, "[B]efore you placed Ms. Gonzales in a pair of handcuffs, did she say anything to you that indicated that she intended to distribute any drugs?" Deputy Lopez answered, "She did say she had to drop off." R. vol. III, at 149. He testified that based on his training and experience he understood that Gonzales was saying she had more drugs to deliver elsewhere.

Next, the two DEA chemists testified about the drug samples that they tested. The first chemist testified that the two methamphetamine samples were 100% pure and weighed 10.68 and 48.3 grams. The second chemist testified that the heroin weighed 24.61 grams.

Finally, the government called an FBI agent as an expert witness on firearms and drug trafficking. The agent had inspected the revolver, ammunition, and drugs before trial. He testified that drug traffickers often use firearms to protect themselves from being robbed. And he testified that dealers often use digital scales to weigh their drugs for sale. Importantly, he also testified that the methamphetamine and heroin were both distribution quantities, not personal-use quantities. The agent estimated that 58.9 grams of pure methamphetamine would yield 235 to 589 doses and that it

could be "stepped on," or diluted with a cutting agent, to double or triple those numbers. As for the heroin, the agent testified that 24.61 grams represented 49 to 246 doses. Based on the dosages, the agent concluded that a single user would be unlikely to have such amounts for personal use.

The defense called Soto-Paz, who disputed Deputy Lopez's testimony that she had met Gonzales on June 7. She testified that she had never been to Martinez's house when Gonzales was there. But on cross-examination, Soto-Paz admitted that she dated Martinez in 2018, that she herself was a former drug user (but was not involved in drug dealing), and that she knew Gonzales and her family. The defense also called Gonzales's brother, who testified that he gave Gonzales the firearm to return to their father the day before she was arrested, despite knowing that she was a felon.

Though the district court's suppression order allowed the government to introduce Gonzales's two pre-handcuffing statements, the government failed to admit either Deputy Lopez's body-camera video of his encounter with Gonzales or the accompanying transcript. Had the government done so, the jury would have heard the full context of the encounter:

> DEPUTY LOPEZ: What else do you have on you right now?
> MS. GONZALES: I got something else to drop off.
> DEPUTY LOPEZ: Okay. Give it to me. One of your sources and I can also see it in your shirt, so hand it to me.
> MS. GONZALES: It's in my shirt.

R. vol. II, at 50. During its closing argument summarizing its evidence in support of the drug charges, however, the government quoted Gonzales as saying she had

6

"something else to drop off." R. vol. III, at 299, 302, 322.[3] It argued Gonzales's statement, together with the FBI agent's testimony about distribution quantities and the presence of the digital scale, proved her intent to distribute. The defense countered that Gonzales's admission—in its words, that "she had dropped something off"—referred to her plan to take the firearm to her father (though the firearm was in her purse inside the truck). *Id.* at 316. The district court instructed the jury to give Gonzales's statement "the weight you think it deserves." R. vol. I, at 538.

The jury convicted Gonzales on all four counts. The court sentenced her to 195 months' imprisonment from an advisory guideline range of 181 to 211 months. Gonzales timely appealed.

## STANDARD OF REVIEW

We review de novo a motion-to-suppress ruling about an alleged *Miranda* violation. *United States v. Williston*, 862 F.3d 1023, 1031 (10th Cir. 2017) (citing *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008)). In doing so, we accept the district court's factual findings unless they are clearly erroneous, and we view the evidence in the light most favorable to the prevailing party—here, the government. *Id.* We also review the entire record de novo in evaluating whether alleged error is

---

[3] Three times the government argued to the jury that Gonzales said she had "something else to drop off." R. vol. III, at 299, 302, 322. This accurately tracked the body-camera transcript, but the jury never had that. Instead, it had only Deputy Lopez's recollection that Gonzales said she "had to drop off." *Compare* R. vol. II, at 50, *with* R. vol. III, at 149.

harmless beyond a reasonable doubt. *United States v. Perdue*, 8 F.3d 1455, 1469 (10th Cir. 1993) (citations omitted).

## DISCUSSION

Gonzales raises three issues for our review. She argues (1) that the district court should have suppressed her pre-handcuffing statements to Deputy Lopez because she was in custody and that admitting the statements was not harmless beyond a reasonable doubt, (2) that all physical evidence derived from those statements should have been suppressed, and (3) that 18 U.S.C. § 922(g)(1) requires a greater showing than that the firearm had crossed state lines, or that Congress exceeded its Commerce Clause authority by enacting § 922(g)(1). Gonzales recognizes that the latter two issues are foreclosed by precedent, so she is simply preserving them.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Harmless Error

Gonzales asks us to find that she was in custody under *Miranda* before she was handcuffed and thus argues that the district court should have suppressed her two incriminating responses to Deputy Lopez's interrogation: "I got something else to drop off" and "It's in my shirt." R. vol. II, at 50.[4] Yet even with a *Miranda* violation, the government could still prevail by proving harmless error beyond a reasonable

---

[4] At the outset, we note that although Gonzales calls her second statement ("It's in my shirt") incriminating, she does not argue that this statement influenced the verdict. We thus focus on Gonzales's first statement, "I got something else to drop off," which was undeniably incriminating.

doubt. *See United States v. Mikolon*, 719 F.3d 1184, 1188 (10th Cir. 2013) (quoting *United States v. Miller*, 111 F.3d 747, 751 (10th Cir. 1997)). In deciding this appeal, we will assume a *Miranda* violation and resolve the appeal based on whether that error was harmless beyond a reasonable doubt.

Harmless error is error that "did not contribute to the verdict." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). Error does not contribute to the verdict when it is "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt*, 500 U.S. 391, 403 (1991), *disapproved of on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991).

The government first elicited testimony about Gonzales's statement during its redirect examination of Deputy Lopez. But the jury never heard testimony about Deputy Lopez's question, "What else do you have on you right now?" R. vol. II, at 50. Nor did it ever hear Gonzales's full statement, "I got something else to drop off." *Id.* The government did not offer into evidence any part of the body-camera footage or the accompanying transcript. All the jury heard was Deputy Lopez's recollection: "[Gonzales] did say she had to drop off." R. vol. III, at 149. During closing argument, the government referenced Gonzales's statement three times— while presenting its evidence for the two drug charges and during its rebuttal. And the district court instructed the jury to give Gonzales's statement "the weight you think it deserves." R. vol. I, at 538.

9

We must consider this contested statement—that Gonzales "had to drop off," R. vol. III, at 149—"in the context of other evidence presented." *United States v. Russian*, 848 F.3d 1239, 1248 (10th Cir. 2017) (quoting *United States v. Mullikin*, 758 F.3d 1209, 1211 (10th Cir. 2014)). Practically, we must weigh "the properly admitted evidence of guilt" against the "prejudicial effect of the [defendant's] admission." *United States v. Glass*, 128 F.3d 1398, 1403 (10th Cir. 1997) (quoting *Schneble v. Florida*, 405 U.S. 427, 430 (1972)). For the government to prove harmlessness beyond a reasonable doubt, it must show that the properly admitted evidence was "so overwhelming" and that any prejudice was "so insignificant by comparison." *Id.* After reviewing the whole record, we conclude that the government has established that any error in admitting Gonzales's pre-handcuffing statement was harmless beyond a reasonable doubt.

In considering the properly admitted evidence of guilt, we note that the government provided overwhelming proof of Gonzales's intent to distribute the methamphetamine and heroin. The government admitted into evidence the drugs and the revolver and elicited testimony from Deputy Lopez and the FBI agent. Deputy Lopez testified that based on his inside information and his own perception, he believed that Gonzales had conducted a hand-to-hand drug transaction with Soto-Paz and that he confirmed this belief when he seized the drugs, scale, and firearm from Gonzales's truck. He testified that digital scales are often used by dealers to weigh drugs. Next, the FBI agent testified that in his experience, the quantities of methamphetamine and heroin seized were more consistent with distribution than

10

personal use. He told the jury that the methamphetamine was highly pure, meaning it could be diluted into hundreds of doses, and that Gonzales possessed at least forty-nine doses of heroin. The agent also corroborated Deputy Lopez's testimony about digital scales being used by drug dealers. And he testified that drug dealers use firearms to protect themselves from being robbed.

Intent to distribute drugs is usually proven by circumstantial evidence. *United States v. Powell*, 982 F.2d 1422, 1430 (10th Cir. 1992) (citing *United States v. Gay*, 774 F.2d 368, 372 (10th Cir. 1985)). That intent "may be inferred from the possession of a large quantity of the substance." *Id.* (collecting cases). The physical evidence here, including 58.98 grams of pure methamphetamine and 24.61 grams of heroin, overwhelmingly established Gonzales's intent to distribute. The FBI agent—who was admitted as an expert witness on drug trafficking with no objection from Gonzales—testified that he had never seen a non-dealing personal user with as much methamphetamine and heroin as Gonzales had. This compelling expert evidence, combined with the firearm, the scale, and Deputy Lopez's eyewitness testimony, was overwhelming evidence of Gonzales's intent to distribute.

As for prejudice from the testimony about Gonzales's roadside statement, we agree with the government that any prejudice was comparatively insignificant. Gonzales calls her statement a "confession." Opening Br. 28. A confession is a suspect's "acknowledgment of guilt." *Confession*, *Black's Law Dictionary* (11th ed. 2019). It is "the most compelling possible evidence of guilt." *Miranda*, 384 U.S. at 466. But the Supreme Court has distinguished between "statements by a defendant

[that] may concern isolated aspects of the crime or may be incriminating only when linked to other evidence" and "a full confession in which the defendant discloses the motive for and means of the crime." *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991).[5] The latter type of confession "may tempt the jury to rely upon that evidence alone in reaching its decision." *Id.*

Gonzales's incriminating statement falls into the former category of confessions because it bears on her intent to distribute but is meaningless without being linked to the physical evidence Deputy Lopez seized. *Fulminante*, 499 U.S. at 296. By itself, the statement that the jury heard was vague and ambiguous. Although the government argued that Gonzales meant she had other drug deliveries in Socorro, defense counsel argued that Gonzales was "dropping off" her father's firearm.

Had the government provided the full context—Deputy Lopez's question and Gonzales's full statement—it would have been far more damning to her chances of acquittal. First, Gonzales's exact statement was that she had "something *else* to drop off," strongly implying that she had already dropped off, which corroborated Deputy Lopez's observation of a drug transaction. R. vol. II, at 50 (emphasis added). Second, Deputy Lopez asked her what she had "on [her] right now." *Id.* The only item Gonzales had "on her" was the plastic bag of methamphetamine, not the firearm in

---

[5] The two categories of confessions are subject to the same degree of harmless-error review, but "the Court's opinion [in *Fulminante*] suggests that the latter category is less likely to be harmless." *United States v. Giddins*, 858 F.3d 870, 886 n.10 (4th Cir. 2017).

her purse, as the defense argued she meant by "drop off." As it stood, the jury heard only a truncated version of Gonzales's statement—that she "sa[id] she had to drop off." R. vol. III, at 149. This statement's low probative value helps quiet any concerns that it affected the verdict.

Examining Gonzales's defense theory also confirms our conclusion. She offered only a personal-use theory to counter her alleged intent to distribute. She had no other choice; because "controlled substances are hardly collector's items, possession must be for one of two purposes, personal use or distribution to others." *United States v. Grant*, 233 F. App'x 840, 844 (10th Cir. 2007) (unpublished). Setting aside the implausibility of a drug user having the financial means to stockpile 83.59 grams of controlled substances to consume over time,[6] the story Gonzales told the jury has several gaping holes of its own. For instance, the jury never heard any direct evidence that Gonzales was even a drug user, let alone that she used both methamphetamine and heroin. If the drugs were for personal use, why were they in her truck? Why were they in two separate bags? *See United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000) (citations omitted) (noting that the manner of packaging can support intent to distribute). Why was one of the bags in her shirt? What was she doing at Martinez's house? As for the firearm and the § 924(c) charge, if the firearm was her father's, why didn't her father testify? Why was the firearm still loaded? *See*

---

[6] The FBI agent testified that at a per-ounce price, methamphetamine was worth between $300 and $400 in 2018; heroin, between $800 and $1,600. Gonzales had about two ounces of methamphetamine and one ounce of heroin—worth between $1,400 and $2,400.

*United States v. Poe*, 556 F.3d 1113, 1127 (10th Cir. 2009) (noting that one factor under § 924(c) is whether the firearm was loaded). The jury was left without answers to any of these questions.

What's more, if Gonzales's unwarned statement had been excluded, her defense theory would not have changed. *Cf. United States v. Resendiz-Patino*, 420 F.3d 1177, 1181–82 (10th Cir. 2005) (reasoning that based on the defense's theory, the jury could not have drawn a favorable inference for the defense even without the allegedly erroneous evidence). The defense never addressed Gonzales's statement during its case, nor did it call any witnesses to explain the statement. The trial would have proceeded just as it did—with the same physical evidence and testimony. The minuscule role the statement played in the government's case *and* in Gonzales's defense bolsters our confidence that "the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993).

After weighing the strength of the government's case against the prejudicial effect of Gonzales's unwarned statement, we hold that any district-court error was harmless beyond a reasonable doubt.

## II.    Derivative Physical Evidence

Gonzales next argues that the drugs and firearm recovered during the stop should have been suppressed as physical fruits of her unwarned statements. Yet she acknowledges that *United States v. Patane* forecloses this argument. *Patane* held that derivative physical fruits of unwarned but otherwise voluntary statements are

14

admissible. 542 U.S. 630, 634 (2004) (plurality op.); *id.* at 645 (Kennedy, J., concurring in the judgment) ("Admission of nontestimonial physical fruits . . . does not run the risk of admitting into trial an accused's coerced incriminating statements against himself."); *see also United States v. Phillips*, 468 F.3d 1264, 1265 (10th Cir. 2006) (explaining *Patane*'s holding).

Because Supreme Court precedent answers this argument, we affirm the district court's ruling that the derivative physical evidence was admissible.

## III.    Felon-in-Possession Conviction

Finally, Gonzales makes two arguments about her conviction under the felon-in-possession statute, 18 U.S.C. § 922(g)(1). In her view, § 922(g)(1) requires that a defendant's *possession* somehow affect commerce, and simply showing that a firearm was once transported in interstate commerce does not satisfy this requirement. Yet she acknowledges that *Scarborough v. United States* forecloses this argument. *Scarborough* held that the interstate-commerce-nexus requirement "was satisfied by proof that the firearm . . . possessed had previously traveled in interstate commerce." 431 U.S. 563, 566–67 (1977).

Gonzales alternatively argues that Congress exceeded its Commerce Clause authority when it passed § 922(g)(1). She admits that this claim is also foreclosed by precedent, though she does not cite a case. The government swoops in to help, citing *United States v. Urbano*, which rejected a facial interstate-commerce challenge to § 922(g)(1) under circuit precedent. 563 F.3d 1150, 1153–54 (10th Cir. 2009) (citations omitted).

Because Supreme Court and Tenth Circuit precedents answer these arguments, we affirm the § 922(g)(1) conviction.

## CONCLUSION

Any *Miranda* error in admitting into evidence Gonzales's pre-handcuffing statements to Deputy Lopez was harmless beyond a reasonable doubt. We affirm Gonzales's conviction and sentence.

Entered for the Court

Gregory A. Phillips
Circuit Judge