**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Anthony E. LUCERO, Jr.,
Defendant-Appellant.**

No. 78–1094.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 26, 1979.

Decided July 20, 1979.

Rehearing Denied Aug. 17, 1979.

Narciso Garcia, Jr., Albuquerque, N. M. (with James R. Toulouse of Toulouse, Krehbiel & DeLayo, Albuquerque, N. M., on the brief), for appellant.

Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M. (with Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Anthony E. Lucero appeals from his jury trial conviction on thirteen counts of transporting forged securities in interstate commerce in violation of 18 U.S.C. § 2314 and 18 U.S.C. § 2. He was sentenced to twelve concurrent imprisonment terms of five years as well as one five year term of probation following imprisonment. Lucero points to numerous alleged errors as mandating reversal. Four of his allegations require comment.

Viewing the facts in the light most favorable to the jury's verdict, we glean the following broad outline of events. In April of 1975, approximately 900 blank money orders drawn on the Central Bank of Oakland, California, were stolen together with a machine for stamping dollar values onto blank checks. The government's two chief witnesses, John and Theresa Claudio, testified that Lucero came to their Albuquerque home in mid-1976 seeking their assistance in negotiating the stolen money orders which had come into his possession. The money orders had by this time been stamped with dollar values in excess of $93,000. The plan for negotiating the securities included successive trips to El Paso, Texas, and Juarez, Mexico, in the fall of 1976. Lucero and the Claudios ultimately transferred a quantity of money orders to a Mexican drug dealer in exchange for drugs and a $10,000 downpayment. Lucero was charged and convicted, however, of participating in the negotiation of only thirteen money orders, none of which were involved in the Juarez transactions. The Claudios claim they concealed the thirteen from Lucero before turning the bulk of them over to the Juarez drug dealer. Eleven of these money orders were forged and passed directly by the Claudios. Two were supposedly stolen from the Claudios and passed by a third party. Mrs. Claudio was arrested in December 1976 while attempting to negotiate one of the money orders. She and her husband subsequently cooperated in the government's case against Lucero by participating in surreptitiously recorded conversations with him as well as by testifying against him at trial.

One claim of reversible error is that the jury was unduly prejudiced by the introduction into evidence of tape recorded conversations between Theresa Claudio and Lucero which referred to narcotics transactions as well as the forgery operation. It is contended these conversations constituted impermissible evidence of unrelated crimes.

Lucero correctly cites *Morgan v. United States*, 355 F.2d 43 (10th Cir.), *cert. denied*, 384 U.S. 1025, 86 S.Ct. 1976, 16 L.Ed.2d 1029 (1966), for the proposition that evidence of other crimes is admissible only for such purposes as establishing common scheme, design, motive or intent when its probative value outweighs the prejudice to a defendant resulting from its admission. *See* Fed.R.Evid. 404(b). While trial courts have discretion to strike the balance between probative value and prejudice, they

must be sensitive to the potential prejudice that is always inherent in evidence of a defendant's prior uncharged crimes or wrongs. *United States v. Carleo,* 576 F.2d 846, 849 (10th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978). Trial courts therefore have a duty to excise evidence of other uncharged wrongs if they can do so without destroying the relevancy of the evidence that addresses itself to the charges.

In this case, the court concluded that the discussion of drug transactions was so intertwined with the money order discussion that it could not reasonably have been excised. In addition, the taped conversations were relevant to the jury's need to evaluate the credibility of Lucero's claim that his connection with the Juarez drug dealer arose out of legitimate currency speculation transactions. Admitting the tape recordings enabled the jury to consider the nature of the relationship between Lucero, the Claudios, and the drug dealer. The trial court cautioned the jury that Lucero was "not on trial before you on any charge relating to the purchase or sale of narcotics." Record, vol. 7, at 907. The evidence regarding narcotics transactions, said the court, was to be strictly limited in the jury's consideration to the issues of the parties' relationship and intent. Under the circumstances described, the tape recordings were properly admitted. *See Chase v. Crisp,* 523 F.2d 595, 600 n.4 (10th Cir. 1975), *cert. denied,* 424 U.S. 947, 96 S.Ct. 1418, 47 L.Ed.2d 354 (1976); *United States v. Roe,* 495 F.2d 600, 604 (10th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 107, 42 L.Ed.2d 92 (1974); *Collins v. United States,* 383 F.2d 296, 301 (10th Cir. 1967).

■ Lucero next complains that it was reversible error to allow the jury to use government prepared transcripts of the tape recordings. He concedes that it is appropriate to employ supplemental transcripts in some circumstances to assist a

jury in following recorded conversations. However, Lucero contends that the transcripts in question contained serious errors and that he did not stipulate to their accuracy. Lucero suggests that the jury should have been provided with a defense version [1] of the tape recordings under the authority of *United States v. Onori,* 535 F.2d 938, 948–49 (5th Cir. 1976) and *United States v. Rochan,* 563 F.2d 1246, 1251–52 (5th Cir. 1977).[2] Although the Fifth Circuit's approach is an eminently sound one, we are persuaded that the safeguards employed by the trial court here were adequate.

Out of the jury's presence, the trial court heard testimony from the transcriber of the tapes as to the accuracy of the transcripts. In addition, the trial court reviewed the transcripts and indicated that "appropriate action" would be taken if substantial variances were detected. Record, vol. 4, at 316. No such variances were found, but the court did give vigorous cautionary instructions to the jury regarding utilization of the transcripts:

> Now, by the use of this transcript, I don't think the Government represents that it's a hundred percent accurate, and the defense does not agree that it is accurate, and the Court does not represent it to be accurate. It is just an aid to you for whatever aid it may be.
>
> You listen to the tape and the tape is the evidence and whatever you think the tape says, that's what it says, not what the transcript says.

Record, vol. 4, at 345–46. At the close of all the evidence the court further instructed the jury as follows:

> Transcripts were furnished to you for such assistance as they might be to you in following the tapes. As I instructed you before, and I repeat again, the tapes, however, are evidence in this case and the transcripts are not evidence. If you perceive any variation, you will be guided solely by the tapes and not by the transcripts.

---

1. No such version was offered at trial.

2. The Fifth Circuit's preferred procedure directs that parties should first seek to arrive at a

stipulated transcript. When dispute arises as to exact language contained in the recordings, each party should then submit its own version of the disputed portions for use by the jury.

Record, vol. 7, at 906. We have carefully compared the transcripts with the actual recordings and find only insignificant variations. Although the Fifth Circuit procedures are preferable to those used here, the admission of the transcripts in this particular case did not constitute reversible error.

■ Lucero next contends that the court's instruction concerning the date of the alleged criminal conduct effectively deprived him of his alibi defense. Correctly noting that an alibi defense is specifically designed to establish the impossibility of having committed the crime at the time and place charged, Lucero argues that time is a critical element of the government's burden of proof. But the trial court explained the indictment against Lucero as follows:

> You will note that the indictment charges that the offense was committed "on or about" a certain date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

Record, vol. 7, at 905. Lucero argues that this instruction destroyed his alibi defense.

Lucero has misconstrued the jury instructions. His alibi was directed at refuting his alleged participation in the El Paso transactions. In contrast, the "on or about" portion of the indictment—and the instructions—did not pertain to the alleged meetings in El Paso. Instead, this phrase had reference to when the thirteen forged securities were transported in interstate commerce. The cashing of each money order resulted in its subsequent interstate transportation to the Central Bank of Oakland, California. Under normal banking practices this event occurred within a few days of the presentment of the money order in California—a time established by testimony at trial. Thus, the "or or about" timing of the offense amounted to a reasonable estimate of the date each offense was committed.

With this perspective on the disputed "on or about" instruction, it is apparent that the alibi defense was not compromised. As has been mentioned, the alibi defense focused not on the occasions the money orders were transmitted in banking channels, but on the supposed presence of Lucero in El Paso when the money orders were transferred by him to the Claudios. The alibi defense thus was concerned with the aiding and abetting aspect of Lucero's alleged involvement in the illegality. The court's instruction on this issue was appropriate:

> The defendant has introduced evidence that he was not present at the time and place he allegedly aided and abetted the crime charged. This is known in law as the defense of "alibi" and that is a legal and proper defense; and if after weighing the evidence in support of the "alibi" with all the facts and circumstances in the case, you have a reasonable doubt that the prosecution has proven that the defendant was present at the time and place he allegedly aided and abetted the crime charged, you should find the defendant not guilty.

Record, vol. 7, at 907. This instruction adequately addressed the alibi defense and gave the jury the opportunity to weigh the government's evidence relating to the times and locations of the alleged incidents of aiding and abetting. The instructions were proper.

■ Finally we consider Lucero's claim that there was insufficient evidence to convict him under the indictment. In evaluating Lucero's contention, we must view the evidence from the entire record in the light most favorable to the government. *United States v. Lopez,* 576 F.2d 840, 843 (10th Cir. 1978); *United States v. Guerrero,* 517 F.2d 528, 530 (10th Cir. 1975). In passing upon the sufficiency of the evidence under that standard we may neither weigh the conflicting evidence nor consider the credibility of the witnesses. *United States v. Lopez,* 576 F.2d at 843; *United States v. Weiss,* 431 F.2d 1402, 1407 (10th Cir. 1970).

■ Lucero's most substantial argument in this connection is that the government's own evidence bars his conviction on counts one and two. Counts one and two are

based on the cashing of the first two money orders, which the indictment charges were "cause[d] to be transported in interstate commerce" on or about October 4 and 7 respectively. This fact alone, urges Lucero, undercuts the government's proof, because John Claudio testified that he had met Lucero in El Paso to receive the money orders on October 9 and 10—days after the first two checks had been cashed. This inconsistency, when viewed in isolation, is troublesome indeed. But we do not believe it justifies reversal.

When the evidence is viewed as a whole, as it must be, the logical inconsistency in dates resulting from the testimony of one witness is not sufficient to warrant second guessing a jury which had other credible evidence from which to find Lucero guilty on all counts. There was such evidence. Both Claudios testified as to Lucero's extensive involvement in the money order scheme. On this point, there was no inconsistency. But there was some inconsistency on the estimated date of the initial El Paso meeting. John Claudio first placed this meeting in the fall of 1976. When pressed for specifics by the government, he suggested that the meeting might have occurred on October 9 or 10. The government introduced hotel records in an attempt to corroborate this version of the time of the meeting. In contrast, Theresa Claudio stated that she was uncertain about the exact date of the El Paso meeting; she thought that it had taken place in the late summer or early fall. She was not uncertain at all, however, regarding Lucero's willing participation in the illicit money order transactions. In light of the uncertainty over the time of the El Paso meeting in question, we do not believe the discrepancy noted by Lucero mandates reversal on the basis of evidentiary insufficiency.

We find no merit to the contention that "there was no direct evidence that the defendant associated himself with any interstate transportation of the thirteen money orders, that he participated in the interstate transportation of the thirteen money orders with a desire that it be accomplished, or that he committed some overt act designed

to make it a success." Brief for Appellant at 43. There was ample evidence from which a jury could have found Lucero guilty of the criminal conduct charged.

WE AFFIRM.