UNITED STATES of America,
Plaintiff–Appellee,

v.

Frank Ellis KELLEY,
Defendant–Appellant.

No. 79–1601.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 15, 1980.

Decided Dec. 1, 1980.

Richard J. Smith, Asst. U.S. Atty., Albuquerque, N.M. (R. E. Thompson, U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff appellee.

Walter L. Reardon, Jr., Albuquerque, N.M. for defendant-appellant.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Frank Ellis Kelley (Kelley) appeals his jury convictions of armed bank robbery, larceny of bank funds, and receipt of a firearm after having been convicted of a felony.

Kelley and his brother, Jesse Kelley (Jesse) were jointly charged in two counts, Counts I and II, with the armed robbery

and larceny of bank funds at the Bank of New Mexico, Albuquerque, New Mexico, on March 23, 1979. Count III charged Kelley, individually, with receipt of a firearm after having been convicted of a felony. A third participant, Jimmie Ralph Davis (Davis), who was seventeen years old at the time of the robbery, pled guilty to a violation of the Juvenile Delinquency Act and agreed to testify as a Government witness.

Prior to trial, Kelley filed a motion to sever Counts I and II from Count III, which was denied by the Court in reliance on our *United States v. Roe*, 495 F.2d 600 (10th Cir. 1974), *cert. denied*, 419 U.S. 858, 95 S.Ct. 107, 42 L.Ed.2d 92 (1974). Although Kelley and Jesse were both convicted as charged, Jesse did not appeal. Thus, only Kelley's conviction is before us on appeal.

The Government developed its case against Kelley via the testimony of several witnesses, including Davis. Davis testified in detail relative to the burglary of a pawn shop ten days prior to the bank robbery and other related events preceding the bank robbery. In so doing, Davis testified, *inter alia*:

Q. How long were the brothers ... in the Wing Pawn Shop?

A. Not very long.

Q. Why did you want weapons?

A. We only had one, and we were planning on getting some money.

Q. On what?

A. On getting some money.

Q. And the weapons were to be used in getting the money?

A. Yes.

Q. What objects, if any, did the brothers bring out of the pawn shop, Mr. Davis?

A. .38 revolver and then a .30 carbine M–1.

[R., Vol. V, at pp. 337–338].

\* \* \* \* \* \*

Q. Now, let me ask you about the M-1; was it necessary to buy more ammunition for that gun?

A. We wanted to play it safe just in case we had to use it.

[R., Vol. V, at p. 342].

\* \* \* \* \* \*

Q. Now, you told us a moment ago, Mr. Davis, that the reason for getting the guns was to get money. Did you have any more discussions after getting the guns with the Kelley brothers about getting money?

A. Yes.

Q. Was there a decision made to rob a bank?

A. Not until a couple of days before we did it.

Q. Whose idea was it to rob a bank?

A. Frank's.

Q. Did you have any suggestions about what might, to be robbed ...?

A. I preferred something else besides a bank.

Q. Why was that Mr. Davis?

A. Not too many people get away with doing it.

[R., Vol. V, at p. 341].

\* \* \* \* \* \*

A. We decided on the Five Points Branch [Bank].

Q. Had anybody gone out and checked around other banks before the morning of the robbery to decide which bank to rob?

A. Thursday night we drove around looking at different banks.

[R., Vol. V, at p. 345].

Other Government witnesses testified relative to the burglary of the pawn shop, the robbery of the bank and the subsequent capture of the trio.

Kelley testified in his own defense. He also presented the testimony of his girl friend's mother, in an effort to impeach Davis and to establish an alibi. Kelley acknowledged on direct examination his prior felony conviction, consistent with his attorney's acknowledgment in his opening statement and the evidence adduced at trial by the Government through the testimony of Kelley's parole officer.

On appeal Kelley does not challenge the sufficiency of the evidence. However, he does contend the trial court erred in: (1) failing to grant his motion to sever Counts I and II (bank robbery) from Count III (possession of a firearm by a felon); and (2) admitting evidence of an uncharged burglary.

## I.

Kelley contends the Court erred in failing to grant his motion to sever Counts I and II, relative to the bank robbery, from Count III, possession of a firearm by a felon. Kelley argues that the Court's refusal to sever the counts gave rise to a prejudicial joinder which allowed the Government to introduce his prior conviction for voluntary manslaughter with a firearm as part of its case in chief. Kelley argues that there is no contention that possession of a firearm and bank robbery are offenses of a similar nature, thus, the joinder was in error.

We agree with Kelley's contention that bank robbery and possession of a firearm by a felon are not, in and of themselves, offenses of a similar nature. However, the propriety of the joinder of offenses herein must be considered under Rules 8(a) and 14, Fed.Rules Cr.Proc., 18 U.S.C.A., and our decisions interpreting these rules.

Rule 8(a) provides:

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or *constituting part of a common scheme or plan*. [Emphasis supplied].

Relief may be obtained from a prejudicial joinder of offenses under Rule 14, which provides in part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever relief justice requires.

When Rules 14 and 8 are considered collectively, it is clear that although a defendant may obtain relief from a prejudicial joinder of offenses, joinder is proper when the offenses constitute "parts of a common scheme or plan."

■ The decision to grant, or not grant a severance is, of course, within the sound discretion of the trial court. In *United States v. Strand*, 617 F.2d 571 (10th Cir. 1980), we stated:

The decision to grant a severance is within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice. *United States v. Heath*, 580 F.2d 1011, (10th Cir. 1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979). A trial court may grant a severance if it appears that the defendant or Government is prejudiced by joinder. *United States v. Herring*, 582 F.2d 535 (10th Cir. 1978). In order to obtain a severance, a defendant must show clear prejudice resulting from joinder at trial. *United States v. Bridwell*, 583 F.2d 1135 (10th Cir. 1978). The fact that severance would improve chances for acquittal is not sufficient. *United States v. Heath, supra*; *United States v. Campanale*, 518 F.2d 352 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

617 F.2d at p. 575.

*See also*: *United States v. Roe, supra*, relied on by the trial court in denying Kelley's motion for a severance, and *United States v. Kellerman*, 432 F.2d 371 (10th Cir. 1970).

A decision not to grant a severance is, of necessity, a weighing process in which both the defendants' and government's positions must be considered and analyzed. In *United States v. Jamar*, 561 F.2d 1103 (4th Cir. 1977), the Court stated:

The fact that no misjoinder under Rule 8(a) occurred, however, does not end our inquiry, for Rule 14 F.R.Cr.P., provides: "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indict-

ment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires . . . ." In contrast to misjoinder, which, if it occurs, is in itself error, *Baker v. United States*, 131 U.S.App.D.C. 7, 401 F.2d 958, 973 (1968); see *Ingram v. United States*, 272 F.2d 567, 570 (4th Cir. 1959), in seeking a reversal under Rule 14, Mrs. Jamar must overcome the burden imposed by a stringent standard of review. In ruling on a motion for severance, the trial court is vested with discretion; it must carefully weigh the possible prejudice to the accused against the often equally compelling interests of the judicial process, which include the avoidance of needlessly duplicative trials involving substantially similar proof. *United States v. Isaacs*, 493 F.2d 1124, 1160 (7th Cir. 1974), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). The exercise of this discretion will be overturned only for clear abuse affecting substantial rights of the accused. *Cataneo v. United States*, 167 F.2d 820, 823 (4th Cir. 1948). We are unable to say in this case that such an abuse of discretion occurred. 561 F.2d at p. 1106. [Footnote omitted].

Furthermore, although the offenses charged, at first glance, as here, may not be of a similar character, joinder is proper when the offenses can be characterized as connected by a common plan. In *United States v. Rabbit*, 583 F.2d 1014 (8th Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979), the Court observed, in upholding the joinder of distinct crimes:

Rule 8(a) of the Federal Rules of Criminal Procedure establishes the standard for joinder of offenses. If the various counts refer to similar types of offenses or are based on the same transaction or on several transactions connected by a common scheme or plan, joinder is proper. 8 *Moore's Federal Practice* para. 8.05[2]. Joinder of offenses under the federal rules is permissive. *Id.* at para. 8.05[1]. Misjoinder raises an issue of law. *Id.* at para. 14.02[1].

583 F.2d at p. 1021.

Applying these standards, we hold that the Court did not err in refusing to grant Kelley's motion to sever. The Government's evidence clearly established that: Kelley, Jesse, and Davis burglarized the pawn shop to obtain some weapons; they obtained the weapons so that they could "get some money"; after obtaining the weapons and purchasing additional ammunition they determined to rob a bank; and, they then utilized the stolen weapons in effectuating the robbery. Under these circumstances, the theft and eventual use of the weapons were part of a common scheme or plan, rendering joinder proper under Rule 8. The offense of theft of the guns and the offense of bank robbery are thus inextricably connected. The fact that Kelley may have been prejudiced by the joinder is of no moment, when, as here, the underlying interrelationship of the offenses charged is established without doubt and when Kelley's participation in both is not challenged on appeal.

## II.

Kelley contends the Court erred in admitting evidence of the uncharged burglary. We disagree.

Whereas evidence of other crimes is generally inadmissible, *Brinlee v. Crisp*, 608 F.2d 839 (10th Cir. 1979), *cert. denied*, 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 evidence of other crimes is admissible to establish a common scheme or design when its probative value outweighs the prejudice to a defendant resulting from its admission. *United States v. Lucero*, 601 F.2d 1147 (10th Cir. 1979). In *Lucero, supra*, we observed:

Lucero correctly cites *Morgan v. United States*, 355 F.2d 43 (10th Cir.), *cert. denied*, 384 U.S. 1025, 86 S.Ct. 1976, 16 L.Ed.2d 1029 (1966), for the proposition that evidence of other crimes is admissible only for such purposes as establishing common scheme, design, motive or intent when its probative value outweighs the prejudice to a defendant resulting from its admission. *See* Fed.R.Evid. 404(b). While trial courts have discretion to strike the balance between probative value and prejudice, they must be sensitive

to the potential prejudice that is always inherent in evidence of a defendant's prior uncharged crimes or wrongs. *United States v. Carleo*, 576 F.2d 846, 849 (10th Cir.), *cert. denied*, 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978). Trial courts therefore have a duty to excise evidence of other uncharged wrongs if they can do so without destroying the relevancy of the evidence that addresses itself to the charges.

In this case, the court concluded that the discussion of drug transactions was so intertwined with the money order discussion that it could not reasonably have been excised. In addition, the taped conversations were relevant to the jury's need to evaluate the credibility of Lucero's claim that his connection with the Juarez drug dealer arose out of legitimate currency speculation transactions. *Admitting the tape recordings enabled the jury to consider the nature of the relationship between Lucero, the Claudios, and the drug dealer. The trial court cautioned the jury that Lucero was "not on trial before you on any charge relating to the purchase or sale of narcotics." Record, vol. 7, at 907. The evidence regarding narcotics transactions, said the court, was to be strictly limited in the jury's consideration to the issues of the parties' relationship and intent.* Under the circumstances described, the tape recordings were properly admitted. *See Chase v. Crisp*, 523 F.2d 595, 600 n. 4 (10th Cir. 1975), *cert. denied*, 424 U.S. 947, 96 S.Ct. 1418, 47 L.Ed.2d 354 (1976); *United States v. Roe*, 495 F.2d 600, 604 (10th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 107, 42 L.Ed.2d 92 (1974); *Collins v. United States*, 383 F.2d 296, 301 (10th Cir. 1967). [Emphasis supplied].

601 F.2d at pp. 1148 -1149.

■ Here, as in *Lucero, supra*, the evidence of the uncharged crime enabled the jury to consider the relationship between Kelley, Jesse and Davis, and, in view of the Court's cautionary instruction that Kelley was not on trial for burglarizing the pawnshop, allowed the jury to more fully understand the manner in which the bank robbery was effectuated without unduly prejudicing Kelley. We will not, based on the facts before us, limit the trial court's broad discretion in admitting evidence, particularly evidence of other crimes, *United States v. Jacobson*, 578 F.2d 863 (10th Cir. 1978), *cert. denied*, 439 U.S. 932, 99 S.Ct. 324, 58 L.Ed.2d 327 (1978). Evidence of motive, intent, opportunity and plan is particularly relevant in a multi-defendant case. *United States v. Herbst*, 565 F.2d 638 (10th Cir. 1977).

WE AFFIRM.