**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 17, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DWAYN GRANT also known as CJ,

Defendant - Appellant.

No. 06-3244

(D. Kansas)

(D.C. No. 04-CR-20001-KHV)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

A jury found Dwayn Grant guilty of one count of possession with intent to
distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). Grant appeals from
his conviction, claiming the trial court erred in refusing to instruct the jury on the

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

lesser included offense of simple possession and in admitting evidence of uncharged drugs in his possession at the time of his arrest. We AFFIRM.

Background

On October 17, 2003, Officer Brian Hill, a police officer with the City of Olathe, Kansas, was conducting a routine patrol. As he patrolled the parking area of an apartment complex, he noticed a car backed into a space on the far, dark end of the lot. Because it was parked in an isolated location away from the entrance to the complex, Officer Hill thought it "looked out of place" and shined his spotlight on the car. (R. Vol. III at 41.) Hill saw the top of a woman's head in the passenger seat, but could not see anyone in the driver's seat. As he approached the passenger side of the parked car, the passenger, Melva Kennedy, sat up in the passenger's seat and began moving from side to side, like "someone sitting in a chair and kicking a ball." (Vol. III at 43.) When Hill reached the passenger side window he observed another person, Dwayn Grant, in the reclined driver's seat. When he shined his flashlight into the car, Hill saw a small glass pipe on the side of Kennedy's foot. It appeared to be a crack pipe.

Hill took the car keys and called for backup. Approximately five minutes later, Officer Holly Barrow arrived. Hill then instructed Grant to get out of the car. Grant acted surprised at the presence of the pipe, denied there were drugs in the car and gave Hill permission to search his person. In Grant's left rear pocket, Hill found a plastic baggie with thirty-three individually wrapped packets of a

-2-

white substance. Some of the packages contained cocaine rocks while others contained cocaine powder.[1] The substance field-tested positive for cocaine. While searching the car, Hill also found a notebook above the visor on the driver's side. The notebook contained calculations Hill believed were evidence of money transactions for drugs. In addition, Hill found $802 in Grant's wallet. Grant and Kennedy were arrested.

Grant was indicted on one count of possession of more than five grams of cocaine base (crack) with the intent to distribute. After testing determined there were only 4.1 grams of cocaine base, the government filed a superseding indictment removing the crack cocaine's weight.[2] Several days before trial, Grant filed a motion in limine seeking to preclude the government from introducing evidence of the additional 5.1 grams of powder cocaine contained in small packets intermingled with the small packets of crack cocaine. The district court denied the motion.

---

[1] Andrew Guzman, the Johnson County Criminalistics Laboratory employee who tested the substances found in Grant's baggie, explained: "Cocaine salt [cocaine hydrochloride] is the common white powder that most people associate with cocaine. Cocaine base is actually the rock cocaine that is commonly know as crack cocaine." (R. Vol. III at 158.) Federal agents identified 4.1 grams of cocaine base (the charged drug quantity) and approximately 5 grams of cocaine powder.

[2] Possession with intent to distribute 5 or more grams of crack cocaine carries a maximum sentence of forty years. 21 U.S.C. § 841(b)(1)(B)(IV)(iii). Less than 5 grams carries a maximum sentence of five years. 21 U.S.C. § 841(b)(1)(D).

Kennedy testified for the government, saying Grant had given her a ride home from work the evening of their arrests. On the way, she smoked some of Grant's crack cocaine. Kennedy could not remember whether Grant gave her the crack cocaine or she found it in his car. In any event, she felt she owed Grant some form of payment for the drugs. Kennedy knew Grant for five or six years but had never seen him use drugs.

Ed Drake, a senior patrol officer with the Olathe Police Department, also testified for the government. According to Drake, a normal user generally purchases only the amount of crack cocaine he or she wants to smoke at the time of purchase; a light user might ingest from .2 to .5 grams a day while a heavy user smokes 1 to 1.5 grams a day; the presence of two types of cocaine indicated Grant "was basically working two different types of drugs for different clientele." (Vol. III at 220.) Drake concluded "these drugs are being . . . possessed with the intent to sell." (*Id*.)

The government offered as evidence photographs of the baggie containing both the crack and the powder cocaine packets confiscated from Grant. Both drugs were admitted over Grant's objection.

At the close of the government's evidence, the government offered, by stipulation, a letter written by Grant. In the letter Grant stated he had no problem with pleading guilty to possession, but the evidence was insufficient to demonstrate his intent to distribute the drugs.

-4-

Grant's theory of defense was that he possessed the drugs, but did not intend to distribute them. His only evidence was the testimony of his mother, Carolyn Grant. She explained how Grant would often accompany her and her husband to the river boat casinos to gamble. A day or two before Grant's arrest she gave him approximately $600 to $650 in large bills to hold so she would not "play[] back" the money. (R. Vol. III at 267.) On the night of the arrest, she and her husband were waiting for Grant to bring the money to their house so they could go to the casinos that evening.

Grant requested an instruction on simple possession, suggesting it was a lesser included offense of the charged offense. He claimed the jury could rationally find possession of cocaine base without an intent to distribute. Grant's request generated the following colloquy at the preliminary instruction conference:

| | |
|---|---|
| The Court: | Do you have any authority which says I'm required to do that over the Government's opposition? |
| [Defense Counsel]: | I do not. And, in fact, I think the case law is over the Government's opposition you are not required. |
| The Court: | Right. |
| [Defense Counsel]: | But I do want to make very clear, I am requesting this instruction consistent with what prior counsel did and submitted to the Court. I don't want you to think that I've abandoned that instruction. I have not. I adopt this, I propose this, I request that it be given. |

(*Id*. at 295-96.)  The judge then asked the government its position.  It objected to the instruction because there was no evidence suggesting Grant was merely a user who possessed the cocaine for personal enjoyment.  The requested instruction was refused.  The next day, at the final instruction conference, the judge addressed Grant personally regarding the lesser included offense instruction stating:  "Mr. Grant, your attorney explained to you that where the Government objects to giving . . . an instruction as to a lesser included offense that the Court cannot give that instruction?"  (*Id*. at 304.)  Grant answered  "Yes."  (*Id*.)  The judge explained, "So that's why I overruled that particular request."  (*Id*.)

The jury convicted.  Thereafter, Grant filed a "Consolidated Motion for Post-Trial Relief" arguing, *inter alia*, the evidence was insufficient and the trial court's erroneous admission of the powder cocaine required acquittal or a new trial.  The judge denied the motion and subsequently sentenced Grant to 63 months imprisonment.  This timely appeal followed.

Discussion

1.  Instruction on Lesser Included Offense

Grant again contends he was entitled to have the jury consider the lesser included offense of simple possession (21 U.S.C. § 844), which carries a significantly less severe penalty than possession with intent to distribute. We review *de novo* whether the offense on which the instruction is sought is a lesser

included offense to the charged crime, but review the trial court's determination whether the evidence justifies the inclusion of the instruction for abuse of discretion. *United States v. Humphrey,* 208 F.3d 1190, 1206 (10th Cir.2000) (citing *United States v. Duran,* 127 F.3d 911, 914 (10th Cir.1997)). It is not a "broad ranging discretion but is focused narrowly on whether there is any evidence fairly tending to bear on the lesser included offense." *Id.* "[A] defendant is entitled to an instruction concerning a lesser crime, pursuant to [Federal Rule of Criminal Procedure] 31(c), if the evidence justifies that instruction."[3] *United States v. Bruce*, 458 F.3d 1157, 1162 (10th Cir. 2006) (quotations omitted), *cert. denied*, 127 S.Ct. 999 (2007). "[I]f there is evidence to support a lesser included offense and defendant requests such a charge, the court has no discretion to refuse to give the instruction." *Id.* (quotations omitted). But a lesser included offense instruction ought not be given to the jury merely to have a convenient compromise if the decision becomes difficult or in sympathy for the defendant. And, while possession is necessarily part of possession with intent to distribute, it is not necessary to give a lesser included offence instruction for that reason alone.

To determine whether the district court should have given a lesser included offense instruction, we apply a four part test:

---

[3] "A defendant may be found guilty of . . . an offense necessarily included in the offense charged." Fed. R. Crim. P. 31(c)(1).

> First, the defendant must properly request the instruction; second, the elements of the lesser included offense must be a subset of the elements of the charged offense; third, the element required for the greater, charged offense that is not an element of the lesser offense must be in dispute; and fourth, the evidence must be such that the jury could rationally acquit the defendant on the greater offense and convict on the lesser offense.

*Humphrey,* 208 F.3d at 1206 (citing *Duran,* 127 F.3d at 914-15).  "If each of these four elements can be satisfied, the district court must provide the instruction."  *United States v Abeyta,* 27 F.3d 470, 473 (10th Cir. 1994); *see United States v. Burns*, 624 F.2d 95, 103 (10th Cir. 1980); *Keeble v. United States*, 412 U.S. 205, 208 (1973).

Here, Grant met the first two parts of the four-part test.  He requested the instruction and "[p]ossession of a controlled substance, relative to the crime of possession of such with intent to distribute, is a prototypal 'lesser included offense.'"  *Burns*, 624 F.2d at 104.  It is less clear whether he met the third part.  "Absent some evidence to counter the strong inference of [the charged offense] . . . the issue is not elevated to a truly disputed one."  *United States v. Joe,* 831 F.2d 218, 220 (10th Cir.1987) (quoting *United States v. Rogers*, 504 F.2d 1079, 1084 (5th Cir.1974)); *see United States v. Haar*, 931 F.2d 1368, 1372 (10th Cir. 1991).  Thus, the third part of the test is not met by the mere expedient of denial and "putting the government to its proofs," but requires a dispute in the evidence.  But, irrespective of the third part, Grant clearly failed to meet the fourth part and

"Failure to meet any part of the test is fatal for the defendant." *Joe,* 831 F.2d at 219.

Since controlled substances are hardly collector's items, possession must be for one of two purposes, personal use or distribution to others. In this case the only issue was intent.

Resolution of the issue depends upon reasonable inferences a jury might draw from the evidence. For three reasons the government suggests only one inference was reasonable – an intent to distribute: (1) The amount of cocaine Grant possessed was more than one person would quickly consume and it was packaged for distribution, (2) Grant's possession of two types of cocaine suggests an intent to distribute and (3) the amount of cash in the denominations found in Grant's possession were indicative of drug dealing.

Grant sees it differently. As to the first point he refers to Officer Drake's testimony regarding quantities of crack a heavy user might use 1 to 1.5 grams per day and contends the amount of crack cocaine he possessed could be consumed by a heavy user over a course of three to four days. Accordingly, he argues, the amount does not necessarily imply an intent to distribute drugs. With respect to the second point Grant acknowledges Drake's testimony that it was not typical for a person to use both types of cocaine (powder and crack) because a user usually prefers one over the other. Nevertheless, he emphasizes that Drake did not say a person will never possess two types of cocaine for personal use. Finally, he

claims his evidence about the amount and denomination of the money in his possession negates any inference with respect to the government's third point.

In summary, Grant concedes the government could properly ask the jury to draw inferences adverse to him, but it would not be obligated to do so. *Burns*, 624 F.2d at 104. From that, he concludes the lesser included offense should have been given, allowing the jury to infer what it might and decide accordingly.[4]

In response, the government claims Grant was not entitled to the lesser included offense instruction because there was simply no evidence he used drugs. Although Grant admitted he possessed drugs, he never admitted to using. In fact, the only testimony on this subject was from Kennedy, who said she had known Grant for five or six years and had never seen him use drugs.

The government's second and third points (two kinds of drugs and suspicious cash) permit an inference of intent to distribute, but they are equivocal and a jury might not draw an allowable inference, even if it is reasonable. The first point is another matter. There was no direct evidence Grant used drugs.

---

[4] We considered and rejected a similar argument in *Haar* where we quoted the district courts findings: "*[A]fter hearing all the evidence, I just didn't think that there was any evidence elicited to establish that Mr. Haar merely possessed it and was not further involved, and I think it all is directed to manufacture and the jury is either going to have to believe that he was involved in the manufacture or not.*" 931 F.2d at 1372 (emphasis added). We then said: "After reviewing the record as a whole, we agree with the trial court's determination that the elements differentiating the two offenses were not in dispute. Therefore, we find no abuse of discretion in the court's rejection of Defendant's requested lesser-included-offense instruction for mere possession." *Id.*

Accordingly, his argument that the amount of drugs discovered in his possession could have been consumed by a heavy user in three to four days is only theoretical. The issue is, tellingly, not what a hypothetical heavy user might consume, but what Grant might consume. Grant's argument would require the jury to merely speculate about his possible drug use, and heavy drug use at that. And there was other evidence of Grant's intent to distribute – possession of thirty-three small packages of two different forms of cocaine and the presence of a drug ledger in his vehicle.

Against an impressive array of evidence suggesting an intent to distribute is the testimony of Grant's mother, explaining his suspicious cash. And his arguments, more hypothetical than rational. But he is required to prove nothing. His defense may consist entirely of attempting to disparage the government's evidence, arguing it is insufficient as proof beyond a reasonable doubt.

While he is presumed innocent and permissible arguments for an acquittal are largely unbound, he is entitled to a lesser included offence instruction only if the evidence is such that the jury could rationally acquit him of the greater offense and convict of the lesser. We could speculate as to whether a jury might rationally acquit based upon the inferences discussed, but we need not rest our decision on such esoteric grounds because his intent was made manifest.

Kennedy testified to obtaining crack cocaine from Grant the night of his arrest[5] and her testimony went uncontradicted. Such evidence of distribution is irrefutable evidence of an intent to distribute. The district court did not abuse its limited discretion in refusing the requested lesser included offense instruction.

But even if the court erred in refusing the instruction, the error was harmless.[6] *See United States v. Trujillo*, 390 F.3d 1267, 1275 (10th Cir. 2004) ("[A] non-constitutional error is harmless unless the error had substantial influence on the outcome of trial or if one is left in grave doubt as to its influence."). The evidence of Grant's intent to distribute was overwhelming.

_____

[5] Kennedy testified she could not remember specifically if Grant handed her the drugs or if she just helped herself. It matters not. Nothing suggests Kennedy had her own crack. The only reasonable inference is that Grant knew she was using his drugs when she loaded and lit the crack pipe while they were in the extremely confines of the car. The jury was correctly instructed:

> The third element of the crime charged requires the government to prove beyond a reasonable doubt that defendant intended to distribute the mixture or substance containing cocaine base. The term "to distribute," as used in these instructions, *means to deliver or transfer possession or control of* something from one person to another.

(R. Vol. I, Doc. 123 at 19 (emphasis added).)

[6] The trial court erroneously stated "where the Government objects to giving . . . an instruction as to a lesser included offense [] the Court cannot give that instruction." (R. Vol. III at 304.) The government claims the trial court's mistake was the result of the representations of Grant's counsel and therefore, we should not review this claim because Grant invited the error. "The invited-error doctrine prevents a party who induces an erroneous ruling from being able to have it set aside on appeal." *United States v. Deberry,* 430 F.3d 1294, 1302 (10th Cir. 2005) (quotations omitted), *cert. denied*, 127 S.Ct. 113 (2006). Because we find any error harmless, we need not decide the issue on this basis.

2.    Admission of Evidence

Grant claims the trial court erred in admitting evidence he possessed powder cocaine under Rule 404(b) of the Federal Rules of Evidence. The government argues Rule 404(b) is inapplicable because it only applies to evidence of acts extrinsic to the charged crime. According to the government this evidence was properly admitted, not under Rule 404(b), but because it was so inextricably intertwined with the charged offense that the witnesses' testimony would have been confusing and incomplete if it were excluded. We agree.

"We review the district court's admission of evidence for abuse of discretion." *United States v. Portillo-Quezada*, 469 F.3d 1345, 1353 (10th Cir. 2006). "Rule 404(b) only applies to evidence of acts extrinsic to the charged crime." *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (quotations omitted).[7] Because the evidence of Grant's possession of powder

---

[7] Rule 404(b) of the Federal Rules of Evidence provides as follows:

> **(b) Other Crimes, Wrongs, or Acts.--**Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

cocaine is not extrinsic, but is intrinsic to the possession with intent to distribute crack cocaine charge, Rule 404(b) is inapplicable. *Id.* ("Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.") (quotations omitted); *see also United States v. Record*, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989) ("An uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted or if it was inextricably intertwined with the charged crime such that a witness' testimony would have been confusing and incomplete without mention of the prior act.") (citations and quotations omitted).

"Such intrinsic 'other act' evidence, although not excluded by 404(b), is still subject to the requirement of Fed.R.Evid. 403 that its probative value is not substantially outweighed by the danger of unfair prejudice." *Lambert*, 995 F.2d at 1007-08. Here, the evidence of Grant's possession of the powder cocaine was relevant to whether his possession of the crack cocaine was with the intent to distribute it. He fails to demonstrate this evidence was more prejudicial than probative.

Grant concedes the evidence was relevant to his intent but nonetheless argues the court failed to meet its "duty to excise evidence of other uncharged wrongs if [it] can do so without destroying the relevancy of the evidence that addresses itself to the charges." *United States v. Kelley*, 635 F.2d 778, 782 (10th

-14-

Cir. 1980). He claims evidence of his possession of the powder cocaine was "not necessary to explain to the jury the government's belief that he was engaged in the distribution of crack cocaine" because the government's experts did not so testify. (Appellant's Br. at 19.) Grant's reliance on *Kelley* is misplaced. *Kelley* involved extrinsic 404(b) evidence. But, more important, the premise of the argument fails. As the government argued, just because the government's experts did not specifically rely on the presence of the powder cocaine in reaching their conclusions does not mean the jury could not consider it a factor in determining whether Grant intended to distribute the crack cocaine.

AFFIRMED.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge