FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 5, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HEATHER NICOLE BYCROFT,

    Defendant - Appellant.

No. 24-7069

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:21-CR-00325-TDD-2)**

_____

Howard A. Pincus, Assistant Federal Public Defender, Denver, Colorado (Virginia, L. Grady, Federal Public Defender, with him on the briefs) for Defendant-Appellant.

Lisa C. Williams, Special Assistant United States Attorney, Muskogee, Oklahoma (Christopher J. Wilson, United States Attorney, with her on the briefs) for Plaintiff-Appellee.

_____

Before **HOLMES**, Chief Judge, **EBEL**, and **CARSON**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

In this direct criminal appeal, defendant Heather Nicole Bycroft argues the district court abused its discretion by admitting evidence that she had recorded illicit pornographic videos of adult females as "other acts" evidence pursuant to Federal

Rule of Evidence 404(b) at her trial for producing child pornography. Specifically, she argues the other acts evidence was irrelevant and did not serve a proper purpose. To the contrary, we agree with the district court that the evidence was relevant because of the substantial similarity between the acts and because there were at least two proper purposes for which this evidence was admitted pursuant to Rule 404(b): to prove Bycroft's identity and the absence of mistake or accident. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM Bycroft's conviction.

## I.    BACKGROUND

Bycroft, along with her husband Jason, was charged on the basis of three videos ("the pool videos") located on Jason's Dropbox account, an online storage service. These videos depict Jason in a pool with a six-year-old girl at a Fourth of July family gathering in 2015. In the first video, Jason is touching the girl's upper leg and torso and then throws the girl into the air. In the second video, Jason moves the girl's shorts and underwear, thus showing part of her groin and upper thigh. In the third video, Jason moves the girl's shorts and underwear, thus exposing her genitalia to the camera.

Bycroft herself is not visibly present in any of the videos. There is, however, a female voice evidently coming from the camera operator in the first and third videos. Bycroft denied that this was her voice. Meanwhile, four witnesses—Bycroft's mother-in-law, Bycroft's sister-in-law, a family friend, and the investigating sergeant—testified that they did believe the voice was Bycroft's. Bycroft was ultimately charged with Sexual Exploitation of a Child/Use of a Child to Produce a

2

Visual Depiction pursuant to 18 U.S.C. §§ 2251(a), (e) & 2 and Possession of Certain

Material Involving the Sexual Exploitation of a Minor pursuant to 18 U.S.C.

§ 2252(a)(4)(B) & (b)(2).

At Bycroft's trial, the government introduced "other acts" evidence under Rule

404(b).  The other acts evidence here constituted several videos that Bycroft and

Jason recorded in public locations, such as store dressing rooms, in which they

intentionally positioned the camera to see up women's skirts—"the Peeping Tom

videos."  There is some confusion as to when these videos were recorded, but the

parties' best estimation is that they were recorded in 2017 and 2018.  In these videos,

Bycroft is visibly identifiable by her wedding ring, her leg tattoo, and at times her

face.  Bycroft's voice is also audible on these recordings.  Though she later admitted

to filming the Peeping Tom videos intentionally, Bycroft initially claimed that she

did not intentionally record them and that her phone at times spontaneously turned on

and started recording.

To be admissible under Rule 404(b), the district court must find that the

evidence is relevant, that its probative value is not substantially outweighed by the

potential for unfair prejudice, that it was introduced for a proper purpose, and the

district court must give a jury instruction regarding the proper purposes of the

evidence if requested.  Huddleston v. United States, 485 U.S. 681, 691–92 (1988).

The government asserted, and the district court agreed, that this evidence was

admissible under Rule 404(b) for the proper purposes of 1) proving Bycroft's

identity, 2) proving the absence of a mistake or accident, and 3) proving a common

scheme or plan between the other acts and the charged acts. The district court did, however, limit the government to three Peeping Tom videos, as opposed to their intended five to ten videos. In addition to arguing that the Peeping Tom videos served none of these purposes, Bycroft also argues that the Peeping Tom videos are dissimilar from the pool videos, and thus irrelevant to her trial, for two reasons: the difference in age of the recorded subjects and the "glaring difference" between moving the girl's suit to expose her genitalia and hiding a camera to see up a woman's skirt. (Aplt. Br. 15.) We disagree. The Peeping Tom videos were highly relevant and served multiple proper purposes.

## II.    STANDARD OF REVIEW

We review evidentiary decisions for an abuse of discretion. See, e.g., United States v. Iverson, 818 F.3d 1015, 1019 (10th Cir. 2016). A district court abuses its discretion in admitting evidence if that admission represents "a clear error of judgment or exceed[s] the bounds of permissible choice in the circumstances." Gilbert v. Cosco, Inc., 989 F.2d 399, 402 (10th Cir. 1993) (internal quotation omitted).

## III.    DISCUSSION

Bycroft argues on appeal that the district court abused its discretion by admitting other acts evidence via Rule 404(b). Bycroft challenges the district court's findings on two of the aforementioned Huddleston factors, arguing that 1) the other acts evidence was irrelevant to the charged act, and 2) the other acts evidence was not admitted for a proper purpose. We will address each in turn.

4

**A. The Peeping Tom videos were relevant to the charged act**

Federal Rule of Evidence 404(b) permits the admission of evidence of "any other crime, wrong, or act" in certain limited circumstances. FED. R. EVID. 404(b)(1)-(2). One of the criteria for admission is that the evidence meets the relevancy requirement of Rule 402. Huddleston, 485 U.S. at 691. Evidence is relevant if it "makes the existence of any fact at issue more or less probable." Id. at 687. Here, the district court did not abuse its discretion in determining that Bycroft's participation in recording the Peeping Tom videos made it more probable that she was the camera operator in the pool videos.

"[T]he lynchpin of Huddleston relevance is similarity." United States v. Henthorn, 864 F.3d 1241, 1249 (10th Cir. 2017). Importantly, the two acts "need not be identical," just "similar." United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000). Similarity can be demonstrated through "physical similarity of the acts or through the defendant's indulging [her]self in the same state of mind." Id. (internal quotation omitted). In Zamora, we found that two acts were similar when both involved the same two perpetrators, the same desired outcome and motive, and similar actions to carry out the crimes. Id. at 762–63. The same can be said here: the evidence suggests that Bycroft and her husband Jason in both sets of videos sought to record unwitting females' genitalia surreptitiously. And that "common characteristic" of illicitly recording pornographic content "is the significant one for the purpose of the inquiry at hand." United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (quoting Julius Stone, The Rule of Exclusion of Similar Fact

5

Evidence: England, 46 HARV. L. REV. 954, 955 (1933)).  Therefore, the significant characteristics in common between the Peeping Tom videos and the pool videos help demonstrate Bycroft's involvement in the charged offense.

Bycroft argues that the other acts evidence was not sufficiently similar because the two sets of videos were "not at all alike."  (Aplt. Reply Br. 1.)  The differences that Bycroft claim render the Peeping Tom videos irrelevant are that 1) the victim of the pool videos was a child, while the victims of the Peeping Tom videos were adults, and 2) in the pool video, Jason maneuvered the girl's clothes to expose her genitalia, which he did not do in the Peeping Tom videos.  Neither of these differences are as "stark" as Bycroft suggests.  (Contra Aplt. Br. 15.)

Bycroft first attempts to differentiate between the two videos by highlighting the age difference in the victims: the Peeping Tom videos depict adults whereas the pool videos depict a child.  Bycroft states that a sexual interest in adult women cannot be equated to a sexual interest in children and, therefore, the acts are entirely dissimilar.  Without agreeing that a sexual interest in an adult female's genitalia is "entirely dissimilar" from an interest in a minor female's genitalia, we note that Bycroft was not charged for having a sexual interest in the girl in the pool videos; she was charged for surreptitiously recording the girl's genitalia.  Nor were the Peeping Tom videos admitted to show her sexual interest in adult women; they were admitted to show Bycroft operated a camera for the purpose of recording unsuspecting female's genitalia.  The critical aspect of the conduct, surreptitiously and non-consensually recording female genitalia, was identical.

6

The other difference in the pool videos that Bycroft asserts is "without parallel" is that Jason maneuvered the girl's clothes to expose her genitalia.  (Aplt. Reply Br. 6.)  Whereas in the Peeping Tom videos he did not.  But this is simply a product of the circumstances and does not render the Peeping Tom videos irrelevant.  In the pool videos, moving the girl's swimsuit was both achievable and necessary to expose her genitalia, and filming at a family gathering was unlikely to raise suspicion.  In a store dressing room, when the subjects were strangers, Jason could not have maneuvered the subjects' clothes and Bycroft could not have openly filmed them without raising alarm.  So, instead of maneuvering the subjects' clothes to expose their genitalia, Bycroft maneuvered the camera to see up the subjects' skirts, thereby attempting to achieve the same objective of exposing their genitalia.  Just because the two scenarios called for different means to achieve their desired ends, it does not follow that the acts are not substantially similar.  See, e.g., Henthorn, 864 F.3d at 1246–47, 1249–51 (describing suspicious death of first wife "pinned under a vehicle" and suspicious injury of second wife "struck in the back of the neck . . . with a large wooden beam" as "extraordinarily similar" to suspicious death of second wife "after falling more than 100 feet from a cliff").

Additionally, Bycroft argues that the difference in time between the recording of the two sets of videos renders them irrelevant.  It is true that we consider whether other acts evidence is "sufficiently close in time" to the charged offense when determining their similarity.  Zamora, 222 F.3d at 762.  But we have repeatedly admitted evidence that involved a significantly larger time lapse, even including

7

multiple decades.  See Henthorn, 864 F.3d at 1251 & n.7 (collecting cases).  Here, the Peeping Tom videos were taken two to three years after the pool videos, if indeed even that long after.  This temporal gap is not enough to override the relevance of the other acts evidence.

Therefore, the district court did not abuse its discretion when it concluded that the Peeping Tom videos were relevant to the charged acts.

## B.  The Peeping Tom videos served multiple proper purposes

District courts cannot admit "other acts" evidence to prove "a person's character in order to show that on a particular occasion the person acted in accordance with the character."  FED. R. EVID. 404(b)(1).  But "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  FED. R. EVID. 404(b)(2).  Here, the Peeping Tom videos served at least two proper purposes: to establish Bycroft's identity in the pool videos and to prove the absence of a mistake or accident in recording the pool videos.

### 1. The Peeping Tom videos help establish Bycroft's identity in the pool videos

The first purpose for which the district court admitted the other acts evidence was to prove identity.  The pool videos contain only the camera operator's voice, which multiple government witnesses believed to be Bycroft's, but she herself denied was her voice.  However, the Peeping Tom videos contain the camera operator's voice and physically identifiable features of Bycroft, including her face, wedding

8

ring, and leg tattoo, thus establishing that the camera operator's voice was Bycroft's. The central issue at trial, as Bycroft admits, was whether the voice on the pool videos belonged to her. Therefore, the jury could have compared the voice in the pool videos to Bycroft's voice in the Peeping Tom videos to answer that question.

Bycroft does not respond to this line of reasoning because she mistakenly contends that "identity" evidence under Rule 404(b) can only come in the form of "signature quality," or modus operandi, evidence. Thus, Bycroft's arguments focus on whether there are sufficiently unique indicators in the two sets of videos to establish a signature quality, by which Bycroft can be identified. What Bycroft overlooks is that a signature quality is simply one way of proving a defendant's identity. See United States v. Mares, 441 F.3d 1152, 1159 n.3 (10th Cir. 2006). When more direct evidence is available to prove a defendant's identity, such as their voice and face as is available here, there is no need to consider whether the evidence bears a signature quality. See, e.g., United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995) (affirming proper identity purpose for "evidence of defendant's inmate number on [a] coffee pot," "a tablet containing an imprint of the robbery demand note," and "defendant's clothing worn at the time of his release from prison being identical to the clothing of the robber"). Relying on a signature quality is not necessary here because of the more straightforward method of proving identity: matching Bycroft's voice to her face and other identifiable characteristics.[1]

---

[1] Bycroft also seemingly argues that admitting this evidence to prove Bycroft's identity in the pool videos was wrong because it "assumes what was sought to be

Additionally, Bycroft now argues that the district court should have excised the Peeping Tom videos to show only enough to identify her. See United States v. Kelley, 635 F.2d 778, 782 (10th Cir. 1980) (recognizing "duty to excise evidence of other uncharged wrongs if they can do so without destroying the relevancy of the evidence that addresses itself to the charges" (quoting United States v. Lucero, 601 F.2d 1147, 1148–49 (10th Cir. 1979))). The district court was not required to excise the Peeping Tom videos here. First, Bycroft did not request that the district court excise the videos at trial. Second, the decision to excise evidence is entrusted to the district court's discretion. See id. at 781–82 (finding that other acts evidence need not be excised when it "enabled the jury to consider the relationship between" defendants and declining to "limit the trial court's broad discretion in admitting evidence, particularly evidence of other crimes"); Lucero, 601 F.2d at 1148–49. Here, the district court exercised its discretion to restrict the government to showing only three of the Peeping Tom videos, but to play those three videos in their entirety. This was not an abuse of discretion, especially in the absence of any request from Bycroft to excise the videos further.

---

proved": that Bycroft was the camera operator in the pool videos. (Aplt. Br. 29.) But the very function of Rule 404(b) evidence is to allow a party to attempt to prove, and the jury to find if they are persuaded, that the charged offense occurred based on the prior acts. If Rule 404(b) evidence could only be introduced to prove identity or any other purpose after the defendant's guilt was established, Rule 404(b) would be superfluous. The fact that a party can submit evidence for the purpose of proving the defendant's identity does not mean the defendant's identity has been proven, just that the evidence is admissible to attempt to prove identity.

**2. The Peeping Tom videos also helps prove the absence of mistake or accident in the creation of the pool videos**

The second purpose for which the district court admitted the Peeping Tom videos was to prove the absence of a mistake or accident in recording the pool videos. The government raised concerns that Bycroft could have claimed either not to have known Jason would expose the girl's genitalia in the swimming pool or not to have been recording intentionally. The latter concern is buttressed by Bycroft's initial claim that she did not intentionally record the Peeping Tom videos, and that her phone at times spontaneously turned on and started recording. Therefore, the Peeping Tom videos could have been used by the jury to prove that Bycroft did not accidentally record the girl's genitalia: rather, this was another example of her intentional efforts to record female genitalia surreptitiously.

Bycroft does little to rebut this argument. Instead, she again relies on the differences between the two sets of videos—the age of the victim and the fact that Jason moved the girl's shorts but not the adult women's—to conclude that the Peeping Tom videos do not prove the absence of a mistake or accident. Again, however, Bycroft's attempts to portray the two sets of videos as critically different fall flat.

Bycroft asserts that the "disparate circumstances" between the two sets of videos "negate any possibility of directly using" the other acts evidence to prove absence of a mistake. United States v. Commanche, 577 F.3d 1261, 1267 (10th Cir. 2009). In Commanche, positing a hypothetical situation, we said that evidence that a

11

defendant "slapped his wife" could not establish absence of mistake when that defendant later was accused of "murdering his wife using his car." Id. Slapping someone could not demonstrate that the defendant later intentionally ran over that person, as opposed to running over them accidentally, because these two circumstances would be so disparate that the only possible value would be demonstrating the defendant's propensity or character for violence. Id. By contrast, the Peeping Tom videos could rebut Bycroft's arguments (1) that Bycroft did not know Jason's intention was to expose the girl's genitalia because it shows Bycroft at other times worked with Jason to record female genitalia, and (2) Bycroft's argument that she unintentionally recorded the videos. The two circumstances at play here are not comparable to the disparate circumstances in the Commanche hypothetical.

The district court also could not have excised the "evidence of other uncharged wrongs" in the Peeping Tom videos "without destroying the relevancy" of the videos: the relevance of the Peeping Tom videos—the absence of mistake in recording the girl's genitalia in the pool videos—was demonstrated by Bycroft's attempts to record up women's skirts, so the jury needed to see these attempts. Cf. United States v. Kelley, 635 F.2d 778, 782 (10th Cir. 1980). Excising the videos to eliminate the uncharged wrongs would thus nullify the very purpose of admitting the videos.

Therefore, the district court did not abuse its discretion in admitting the Peeping Tom videos for the proper purpose of proving the absence of mistake or accident.

12

## IV.    CONCLUSION

The district court did not abuse its discretion in admitting the Peeping Tom videos.  This "other acts" evidence was highly relevant to the charged conduct and served at least two proper purposes: to prove Bycroft's identity and the absence of mistake or accident.[2]  Therefore, we AFFIRM Bycroft's conviction.

---

[2] Because we conclude that both identity and absence of mistake or accident were proper purposes to admit the other acts evidence, we need not reach the third proposed purpose: the existence of a prearranged plan.  It is unclear whether admitting the videos under this third purpose would have been errant.  Even if the district court did err in accepting this purpose, though, it would be a harmless error because the videos would have come in via the two proper purposes.